# IN THE MATTER OF MICHAEL J. TOCCI.

Suffolk. September 9, 1992. - October 8, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Attorney at Law*, Admission to practice, Educational requirements. *Constitutional Law*, Attorney at law, Equal protection of laws, Full faith and credit.

In a case in which the Board of Bar Examiners denied an application to sit for the Massachusetts bar examination because the applicant had not graduated from a law school approved by the American Bar Association as required by S.J.C. Rule 3:01, § 3.3, the circumstance of the petitioner's having made an informed decision to complete his legal education at an unaccredited school did not provide an equitable basis for waiver of the rule; moreover, the purposes of the rule would not be served by a waiver in the circumstances. [545-547]

The requirement of S.J.C. Rule 3:01, § 3.3, that an applicant for admission to the Massachusetts bar have graduated from a law school approved by the American Bar Association, is constitutionally valid inasmuch as there is a rational connection between that requirement and an applicant's fitness to practice law. [547-548]

There was no merit to a claim that S.J.C. Rule 3:01, § 3.3, as applied to a person who had graduated from an unaccredited law school, denied him equal protection of the laws under the Federal Constitution. [548-550]

There was no merit to a claim that a decision of the Supreme Court of New Hampshire, waiving in one instance that court's rule requiring graduation from an accredited law school as a prerequisite to admission to the bar, should be extended full faith and credit with respect to the qualification of the same person to be admitted to the Massachusetts bar. [550]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on November 13, 1991.

The case was heard by *O'Connor*, J.

The petitioner, pro se.

*Robert J. Muldoon, Jr.*, for Board of Bar Examiners.

GREANEY, J. In 1989, the Board of Bar Examiners (board) denied an application by the petitioner, Michael J. Tocci, to sit for the Massachusetts bar examination because he had not graduated from a law school approved by the American Bar Association (ABA), as required by S.J.C. Rule 3:01, § 3.3, as appearing in 382 Mass. 753 (1981).[1] The petitioner sought equitable relief in the Supreme Judicial Court for the county of Suffolk, requesting that the requirements of the rule be waived due to what he maintains are the exceptional circumstances of his case. After hearing, a single justice denied relief. The petitioner then sought reconsideration which was also denied. A judgment was entered which in substance denied the petition. The petitioner has appealed and argues that (1) the single justice erred in concluding that he was not entitled to relief; (2) the denial of relief violates his constitutionally protected right to practice law; (3) the refusal to waive S.J.C. Rule 3:01, § 3.3, violates his constitutional right to equal protection; and (4) this court is compelled to accord full faith and credit to an order of the Supreme Court of New Hampshire which granted the petitioner a waiver of its law school educational requirement. We reject these arguments and affirm the order and judgment entered in the county court.

The record discloses the following facts. The petitioner began his legal studies in August, 1984, at Oral Roberts University's O.W. Coburn School of Law in Tulsa, Oklahoma, an ABA-accredited law school. In November, 1985, students at O.W. Coburn were informed that the law school was being "donated" to CBN University[2] in Virginia, a university

---

[1] Supreme Judicial Court Rule 3:01, § 3, as appearing in 382 Mass. 753 (1981), delineates the general requirements for applicants who wish to sit for the bar examination. The full text of S.J.C. Rule 3:01, § 3.3, reads as follows:

"Law School. Each applicant shall have graduated with a degree of bachelor of laws or juris doctor from a law school which, at the time of graduation, is approved by the American Bar Association or is authorized by statute of the Commonwealth to grant the degree of bachelor of laws or juris doctor."

[2] Now named Regent University.

which did not previously have a law school. The transfer occurred in June, 1986, following the petitioner's completion of his second year of legal education. Although O.W. Coburn ended active operations at that time, the law school remained technically open as an ABA-accredited law school until June, 1987, for the purpose of awarding degrees to students, such as the petitioner, who had completed two years of law school prior to the transfer. Under ABA rules, students who complete two years at ABA-accredited law schools may finish their third-year courses at other ABA-accredited schools and then transfer the credits back to their original schools in order to receive their law degrees. Second-year students at O.W. Coburn thus had the opportunity to obtain their degrees from O.W. Coburn, an ABA-accredited law school.

At the time the transfer to CBN University was announced, students in good standing at O.W. Coburn were informed that they could automatically transfer to the new law school in Virginia. In March, 1986, O.W. Coburn and CBN University jointly applied to the ABA for transfer of O.W. Coburn's accreditation to the new law school. Representatives of the ABA made site visits to both O.W. Coburn and CBN University in April, 1986, and met with students at O.W. Coburn. The ABA representatives were frank concerning the unlikely prospects for transfer of accreditation and encouraged the students to look for options to assure that they would receive law degrees from an ABA-accredited law school. Based on the April site visits, the ABA Section on Legal Education denied the joint application for transfer of ABA accreditation to the new law school in August, 1986, and instead preserved O.W. Coburn's accreditation for the purpose of awarding degrees to its second-year students who completed their studies at other ABA-accredited schools. CBN University did not appeal from this decision. The ABA also denied CBN University's request for waiver of the rule requiring one year of operation before a new law school is eligible for accreditation.

The petitioner decided to move to Virginia and complete his studies at CBN University School of Law. In making this

choice, the petitioner appears to have recognized the difficulties he could encounter due to the school's lack of ABA accreditation. He considered, however, that there were alternatives available to him in States which did not require graduation from a law school approved by the ABA, including several States in which he had interest in practicing law. The petitioner was graduated from CBN University School of Law in May, 1987. Upon his graduation, the petitioner moved to New Hampshire and applied for admission to the bar there. Rule 42 (4) (b) of the Supreme Court of New Hampshire, like our rule, requires that an applicant for admission to the bar graduate from an ABA-approved law school and the petitioner's application was initially denied. The Supreme Court of New Hampshire, however, granted the petitioner's request for waiver of that court's rule. The petitioner successfully sat for the New Hampshire bar examination, was admitted to the New Hampshire bar, and has actively practiced law there since 1988. CBN University School of Law was granted ABA accreditation in May, 1989.

In denying the petitioner's request for waiver of S.J.C. Rule 3:01, § 3.3, the single justice considered the petitioner's arguments essentially to be a challenge to the ABA accreditation scheme and ruled that "this Court cannot remedy the wrong of which he complains." The single justice recognized that our rule "implicitly defers to the ABA accreditation scheme and its decisions to accredit or not to accredit particular schools of law." The single justice noted that the petitioner, by challenging the ABA's decisions regarding CBN University School of Law, was asking this court to exert a high level of scrutiny of ABA procedures. The single justice found that not only would such review be impossible due to lack of evidence, but also that "[s]uch close review [of ABA procedures and decisions] completely contradicts one purpose of S.J.C. Rule 3:01, § 3.3, to defer to the ABA's competence and expertise in accreditation decisions."

1. The petitioner first maintains that the single justice erred in ruling that this court cannot waive S.J.C. Rule 3:01,

§ 3.3, because, as demonstrated in *Novak* v. *Board of Bar Examiners*, 397 Mass. 270 (1986), this court has the equitable power to waive the ABA accreditation requirement. The petitioner misconstrues the decision of the single justice. The single justice did not rule that this court does not have the authority to waive the requirements of S.J.C. Rule 3:01, § 3.3; such equitable power is inherent in this court. Rather, the single justice denied the petitioner's request for a waiver of the rule, notwithstanding the fact that the petitioner's "predicament is not a result of his error, fault or wrongdoing," because the purposes of S.J.C. Rule 3:01, § 3.3, would not be served by waiver of the rule in this case.

Further, contrary to the petitioner's argument, the circumstances of this case vary significantly from the case of *Novak* v. *Board of Bar Examiners*, *supra*, in which this court concluded that the interests of equity and justice were best served by granting the applicant waiver of the ABA accreditation requirement of S.J.C. Rule 3:01, § 3.3. In *Novak*, the applicant would have qualified to take the bar examination except that the requirements of S.J.C. Rule 3:01, § 3.3, had been changed after the applicant entered and graduated from law school.[3] The applicant could not have known at the time he graduated from law school that the rule would be

---

[3]At the time the applicant in *Novak* entered and graduated from law school, S.J.C. Rule 3:01, § 3.3, as amended, 370 Mass. 908 (1976), provided that an applicant for admission to the bar "shall have graduated from a law school which, *at the time of filing the application*, is approved by the [ABA]" (emphasis added). The law school the applicant attended was aggressively seeking ABA accreditation at the time he enrolled and the applicant could reasonably have anticipated that he would eventually qualify under S.J.C. Rule 3:01, § 3.3. The school did, in fact, receive ABA accreditation three years after the applicant's graduation. The applicant thus would have qualified to take the Massachusetts bar examination at the time he applied, except that S.J.C. Rule 3:01, § 3.3, had been amended (effective April 14, 1980), after he graduated from law school to the present rule which requires that an applicant for admission to the bar "shall have graduated . . . from a law school which, *at the time of graduation*, is approved by the [ABA]" (emphasis added). We noted in *Novak*, *supra* at 272, that waiver had also been granted to two other individuals from the same law school and the same graduating class as that applicant. In 1988 the court granted a third such request for waiver.

amended, and that he would be denied the opportunity to sit for the bar examination. In contrast, the petitioner in this case was aware at the time he decided to complete his legal education at an unaccredited law school that the vast majority of States had adopted rules similar to S.J.C. Rule 3:01, § 3.3. Despite the knowledge that he could be precluded from practicing law in many States unless he could obtain a waiver of the ABA accreditation requirement, the petitioner decided to complete his studies at the new law school. Although we are not entirely unsympathetic to the hardship imposed on the petitioner by the application of S.J.C. Rule 3:01, § 3.3 to his circumstances, we recognize that the petitioner made an informed decision to accept this hardship. The objective equities of the petitioner's circumstances do not justify waiver of the rule.

2. The petitioner contends that the board did not articulate a valid reason for denying his application to sit for the bar examination and therefore he has been denied his constitutional right to practice law. The board denied the petitioner's application because he had not graduated from an ABA-approved law school. The board recognized that it was dealing with an eligibility requirement which it did not possess discretion to modify or waive. The petitioner's argument boils down to a constitutional challenge to the facial validity of S.J.C. Rule 3:01, § 3.3.

This court has previously observed that the ABA approval requirement, as well as a board of bar examiners' or similar authority's refusal to waive that requirement, has been upheld by numerous State and Federal courts in the face of constitutional challenges. *Novak* v. *Board of Bar Examiners*, *supra* at 273, and cases cited. A State's substantial interest in the qualifications of those it admits to the practice of law within its boundaries provides the basis for broad power to establish standards for licensing legal practitioners. *Goldfarb* v. *Virginia State Bar*, 421 U.S. 773, 792 (1975). Such standards will be upheld under the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution so long as they have a rational connec-

tion with an applicant's fitness or capacity to practice law.[4] *Schware* v. *Board of Bar Examiners of N.M.*, 353 U.S. 232, 238-239 (1957).

There is clearly a direct rational connection between the requirement of graduation from an accredited law school and an applicant's fitness to practice law. The ABA standards relating to the accreditation of law schools provide assurance that applicants to the bar "have experienced a generally uniform level of appropriate legal education." *Novak* v. *Board of Bar Examiners, supra* at 274. The Supreme Court of Florida explained its rationale for relying on ABA accreditation in *LaBossiere* v. *Florida Bd. of Bar Examiners*, 279 So. 2d 288, 289 (Fla. 1973): "We were persuaded to follow the American Bar Association standard relating to accreditation of law schools because we sought to provide an objective method of determining the quality of the educational environment of prospective attorneys. This was deemed especially necessary because of the rapid growth in the number of educational institutions awarding law degrees. We wished to be certain that each of these many law schools provided applicants with a quality legal education, but we were unequipped to make such a determination ourselves because of financial limitations and the press of judicial business." These considerations are relevant in this case because the ABA affirmatively denied accreditation to CBN University School of Law in its first year of operation. The requirements of S.J.C. Rule 3:01, § 3.3, provide a constitutionally valid reason to deny the petitioner's application to sit for the bar examination.

3. The petitioner also contends that the provisions of S.J.C. Rule 3:01, as applied to his circumstances, deny him equal protection of the laws under the Federal Constitution because § 3.4 of the rule provides for alternative independent

---

[4]The right to practice law has never been considered a fundamental right warranting strict judicial scrutiny for purposes of due process and equal protection analysis. *Application of Urie*, 617 P.2d 505, 509 n.7 (Alaska 1980), and cases cited. Compare *Matter of Jadd*, 391 Mass. 227, 230 (1984) (practice of law is a fundamental right for purposes of analysis under the privileges and immunities clause).

approval of graduates of foreign law schools, but does not provide for independent approval of graduates from unaccredited American law schools.[5] There is no merit to this claim.

"Equal protection does not prohibit differences in treatment where there is a rational basis for those differences reasonably related to the purposes which the [rule] seeks to accomplish." *Goldman* v. *Dennis*, 375 Mass. 197, 200 (1978). A rule will not be set aside on equal protection grounds "if any state of facts reasonably may be conceived to justify it." *Marshfield Family Skateland, Inc.* v. *Marshfield*, 389 Mass. 436, 446 (1983), quoting *Commonwealth* v. *Henry's Drywall Co.*, 366 Mass. 539, 541 (1974). The petitioner fails to assert any argument to challenge the rationality of the alternative approval mechanism for foreign law school graduates. He simply claims that equity requires that he also be permitted to demonstrate that he received a legal education equivalent to that provided at an ABA-accredited law school. We have already rejected this argument. Because the ABA does not evaluate foreign law schools for accreditation, it is reasonable to provide an alternative approval system for foreign law school graduates. We also point out that the board may require a graduate of a foreign law school to complete further legal studies before being given permission to sit for the bar examination. Accordingly, we reject the petitioner's claim

---

[5]The full text of S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 753 (1981), reads as follows:

"Foreign Law Schools. Any applicant who received his legal education at a law school located outside of any State, district or territory of the United States shall have pre-legal education equivalent, in the Board's opinion, to that set forth in subsections 3.1 and 3.2 and legal education equivalent, in the Board's opinion, to that provided in law schools approved by the American Bar Association. Before permitting such an applicant to take the law examination, the Board in its discretion may, as a condition to such permission, require such applicant to take such further legal studies as the Board may designate at a law school approved by the American Bar Association."

that rule 3:01 violates his right to equal protection of the laws.[6]

4. Finally, there is no merit to the petitioner's assertion that this court must afford full faith and credit to the decision of the Supreme Court of New Hampshire to waive that court's rule requiring graduation from an ABA-approved law school. The full faith and credit clause does not apply to judgments of a State court on matters of local and statutory law where there is no risk of conflict with, or insult to, another State. *Teare* v. *Committee on Admissions*, 566 A.2d 23, 28 (D.C. 1989), citing *Magnolia Petroleum Co.* v. *Hunt*, 320 U.S. 430, 436-437 (1943). The system of rules a State court adopts to govern admission to the bar is a matter of local policy and the assessments made by the courts of other States regarding a petitioner's legal training need not be extended full faith and credit. *Id.* See *In re Application of Hansen*, 275 N.W.2d 790, 798 (Minn. 1978), appeal dismissed, 441 U.S. 938 (1979) (refusing to defer to another State's assessment of a bar applicant's educational qualifications); *Application of Schatz*, 80 Wash. 2d 604, 611 (1972) (noting that regulation of qualifications for admission to the bar is "peculiarly a domestic affair" not subject to full faith and credit).

We conclude that the concerns that prompted our adoption of the rule requiring graduation from a law school approved by the ABA would be contradicted by a waiver of the rule in

---

[6]The same conclusion applies with respect to the equal protection provisions of the Massachusetts Constitution which the petitioner cites but as to which he makes no separate argument.

The petitioner also refers to the provision of art. 11 of the Massachusetts Declaration of Rights which provides that "[e]very subject of the Commonwealth ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character." He contends that we should scrutinize ABA accreditation procedures "particularly when those procedures cause injuries to the subjects of the Commonwealth." The single justice properly declined to examine those procedures, and, for the reasons already expressed, the record in this case presents no basis for a claim that the constitutional provision referred to above has been violated.

this case. The order and judgment entered by the single justice are affirmed.

*So ordered.*