GREGORY C. OSAKWE *vs.* BOARD OF BAR EXAMINERS.

Suffolk. November 7, 2006. - December 22, 2006.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Attorney at Law,* Admission to practice, Educational requirements. *Board of Bar Examiners. Supreme Judicial Court,* Membership in the bar.

An applicant to sit for the Massachusetts bar examination demonstrated that his legal education was the equivalent of a juris doctor degree obtained from a law school approved by the American Bar Association (ABA) as required by the provisions of S.J.C. Rule 3:01, § 3.4, where the applicant was educated in a country whose legal system is derived from the English common-law tradition, the applicant took a wide array of courses that are offered as part of the core curriculum at ABA-approved law schools and also had sufficient education in and exposure to American law, and the applicant was admitted to and practiced in other American jurisdictions. [90-94]

PETITION filed in the Supreme Judicial Court for the county of Suffolk on February 28, 2005.

The case was considered by *Greaney*, J., as was a motion for reconsideration.

*Gregory C. Osakwe*, pro se.

*Robert J. Muldoon, Jr. (Katy E. Koski* with him) for Board of Bar Examiners.

CORDY, J. The respondent, Board of Bar Examiners (board), denied the application of the petitioner, Gregory C. Osakwe, to sit for the Massachusetts bar examination. The board found that Osakwe, who had his initial legal training in his native Nigeria, failed to satisfy the educational qualifications set out in S.J.C. Rule 3:01, as amended, 425 Mass. 1331 (1997), which governs admission to the bar of the Commonwealth. Under S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981), an applicant who does not hold a juris doctor (J.D.) degree from a law school accredited by the American Bar Association (ABA) may nonetheless sit for the bar examination if he demonstrates that he has

obtained a "legal education equivalent, in the Board's opinion, to that provided in law schools approved by the [ABA]." We have reviewed the petitioner's educational and other qualifications and find that he possesses a legal education sufficient to satisfy the rule. We therefore direct the board to allow him to sit for the bar examination.

1. *Background.* Osakwe graduated from the University of Nigeria with a bachelor of laws (LL.B.) degree in 1990.[1] He then attended the Nigerian Law School in Abuja, where he passed the Nigerian bar examination and was called to the bar of the Federal Republic of Nigeria in December, 1990. Osakwe later moved to Trinidad and Tobago. In 1996, he earned a legal education certificate from the Hugh Wooding Law School and was admitted to practice in the Republic of Trinidad and Tobago.[2] Osakwe then moved to Connecticut, where he earned a master of laws (LL.M.) degree from the University of Connecticut School of Law in May, 2001. Subsequently, Osakwe was permitted to sit for and passed the New York bar examination. He was admitted to practice in New York in February, 2003. In June of that same year, he was admitted to practice before the United States District Court for the District of Connecticut. Osakwe presently practices Federal immigration law in Connecticut and New York.

In June, 2004, Osakwe applied for admission to the Massachusetts bar. In accordance with the board's requirements, he submitted (among other items) certificates evidencing his bar admissions, a copy of his Nigerian LL.B. diploma, and a satisfac-

---

[1]The bachelor of laws (LL.B., from the Latin "legum baccalaureus") degree, technically an undergraduate degree, is the principal law degree in many common-law countries, including Nigeria. In the United States, it has largely been replaced by the juris doctor (J.D.) degree, which is a graduate degree. This difference in name and form masks a substantive similarity in legal education. Students earning the LL.B. degree may have undertaken the same focused study in law as those earning the J.D. degree in the United States. Our analysis here focuses on the nature and quality of Osakwe's education, not the formal title of his degrees.

[2]Although the record is unclear on this point, the legal education certificate from the Hugh Wooding Law School seems to indicate successful completion of Trinidad and Tobago's equivalent of the bar examination. Osakwe's certificate of admission in that jurisdiction is dated two months after the certificate. Osakwe stated at oral argument that the certificate is required of all foreign-trained lawyers seeking admission in Trinidad and Tobago.

tory score report for the multistate professional responsibility examination (MPRE). In a reply letter, the board informed Osakwe that, in its estimation, he lacked the requisite academic qualifications to sit for the examination.[3] The board informed Osakwe that before being allowed to sit for the examination he would first have to obtain a J.D. degree.

Osakwe filed a complaint for administrative review in the Superior Court, which was dismissed. He then filed the instant petition in the Supreme Judicial Court for Suffolk County. A single justice dismissed the petition and denied a motion for reconsideration, both without hearing. Osakwe appealed to the full court.

2. *Qualifications for taking the bar examination.* Admission to the bar of the Commonwealth is governed by G. L. c. 221, § 37, and S.J.C. Rule 3:01. Petitions for admission are filed in the county court and referred to the board to ascertain the qualifications of applicants. S.J.C. Rule 3:01, § 1.3, as appearing in 382 Mass. 753 (1981). The board examines an applicant's education and moral character. Those satisfying its standards may sit for the bar examination and, if successful, be admitted to practice. S.J.C. Rule 3:01, § 5.1, as appearing in 411 Mass. 1321 (1992). The educational requirements to sit for the examination include a high school diploma and a college degree (or the equivalent), and a J.D. degree from an ABA-accredited law school. S.J.C. Rule 3:01, § 3, as amended, 399 Mass. 1213 (1987). Only the last qualification is at issue here.

Osakwe seeks to sit for the examination under the exception to the J.D. requirement for foreign-trained lawyers found in

---

[3]The board sent two letters to Osakwe, one dated June 24, 2004, and the other, July 9, 2004. Apparently Osakwe communicated by telephone with the board's executive director in the interim, and provided further information about his legal education. It is unclear from the record, however, what exactly he sent or said to the board during that exchange. It is also unclear what further investigation (if any) was conducted by the board. Although he did submit his transcript from the University of Connecticut and certificates of bar admissions, Osakwe does not appear to have initially submitted to the board the transcripts and course descriptions from his Nigerian schools, and the general discussion of the Nigerian legal system and education which are presently part of the record. The board does not contend that we should not consider this material. We find these items to be important to a fair and thorough analysis of Osakwe's qualifications.

S.J.C. Rule 3:01, § 3.4.[4] The board has issued guidelines to applicants discussing how it applies these rules.[5] See Massachusetts Board of Bar Examiners, Information Relating to Admission of Attorneys in Massachusetts at 7-8 (Mar. 2006) (guidelines). In general, the board "may" permit "[g]raduates of the common-law faculties of law schools in foreign countries (other than Canada) whose jurisprudence rests upon the common-law tradition" to sit for the examination.[6] *Id.* at 8. The board may condition its permission on "successful completion of such academic legal study at an ABA-approved law school as the [b]oard may require," which study may include courses taken as part of a master of laws degree. In its evaluation of educational qualifications the board may also consider factors "including, but not limited to, graduate legal studies other than those in Master of Law programs in ABA-approved law schools, admission to practice in other American jurisdictions, and length and nature of practice or teaching in an American jurisdiction." *Id.*

"Although the initial scrutiny of the qualifications of each applicant is delegated by statute and by rule to the board, we retain the inherent and exclusive jurisdiction over any decision to admit an attorney to the practice of law in this Commonwealth." *Wei*

---

[4]S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981), provides:

"Foreign Law Schools. Any applicant who received his legal education at a law school located outside of any State, district or territory of the United States shall have pre-legal education equivalent, in the [b]oard's opinion, to that set forth in subsections 3.1 and 3.2 and legal education equivalent, in the [b]oard's opinion, to that provided in law schools approved by the American Bar Association. Before permitting such an applicant to take the law examination, the [b]oard in its discretion may, as a condition to such permission, require such applicant to take such further legal studies as the [b]oard may designate at a law school approved by the American Bar Association."

[5]We appended the guidelines, entitled Important Information for Attorneys from Foreign Countries, Applying Under General Rule 3:01, Section 3, to our opinion in *Wei Jia* v. *Board of Bar Examiners*, 427 Mass. 777, 789 (1998) (*Wei Jia*). The most recent version of the guidelines does not differ in substance from the *Wei Jia* guidelines. See Massachusetts Board of Bar Examiners, Information Relating to Admission of Attorneys in Massachusetts at 7-8 (Mar. 2006) (guidelines).

[6]Graduates of common-law faculties in Canada are permitted to sit for the examination as a matter of course. See guidelines, *supra* at 7.

*Jia* v. *Board of Bar Examiners*, 427 Mass. 777, 782 (1998) (*Wei Jia*), citing G. L. c. 221, § 37 (petition for examination for admission as attorney), and S.J.C. Rule 3:01. This jurisdiction extends to preliminary steps, most importantly the decision to allow an applicant to sit for the bar examination. "Accordingly, we review the legal education of the petitioner de novo, and make our own determination whether he has met the requirements of S.J.C. Rule 3:01, § 3.4." *Id.* at 782-783. We have generally given deference to the board's expertise and experience in applying the rules. See *id.* at 782. On occasion we have not agreed with the board's recommendation and gone so far as to grant a waiver of a rule. See, e.g., *Matter of Tocci*, 413 Mass. 542, 546 (1992) (*Tocci*) (court has equitable power to waive requirements for admission); *Novak* v. *Board of Bar Examiners*, 397 Mass. 270, 274 (1986) (*Novak*) (waiving S.J.C. Rule 3:01, § 3.3). Osakwe does not seek such a waiver. Rather, he asks us to find that his education satisfies the exception in S.J.C. Rule 3:01, § 3.4, and to permit him to sit for the examination.

We conduct our review mindful of the purpose of the educational requirement for sitting for the bar examination. As we have said, "[T]here is clearly a direct rational connection between the requirement of graduation from an accredited law school and an applicant's fitness to practice law. The ABA standards relating to the accreditation of law schools provide assurance that applicants to the bar 'have experienced a generally uniform level of appropriate legal education.' " *Tocci, supra* at 548, quoting *Novak, supra* at 274. Thus, when we review the credentials of those educated abroad, the ABA standards provide a touchstone for the analysis. "[T]here must be a recognizable and significant resemblance between a foreign applicant's complete legal education and the legal education that generally is provided to a recipient of a juris doctor degree in a law school approved by the ABA." *Wei Jia, supra* at 783.

One might argue that we should dispense with a rigorous application of the educational requirement for those with significant education and experience in foreign common-law jurisdictions. This would allow more candidates to sit for the bar examination and would make the results of that examination our primary

mode of assessing an applicant's qualifications. In cases like Osakwe's, where the applicant clearly has significant legal education, we might presume that the bar examination will adequately assess the particular knowledge of American and Massachusetts law we require of attorneys. As it stands now, we in effect allow the ABA, through its accreditation process, to control a primary element of an evaluation that rests in our exclusive jurisdiction. Those who do not satisfy the requirements of an ABA-accredited school are almost completely excluded from our consideration.

The argument to dispense with a rigorous application of the educational requirement, however, does not fully capture the different purposes served by the bar examination and the educational requirement. The examination's main purpose is to subject all candidates to a uniform objective evaluation. It also provides evidence that, faced with novel factual situations, candidates can apply legal principles quickly and correctly. This is, we think, a necessary but not a sufficient qualification for the practice of law in this Commonwealth. The bar examination is not simply a summary examination of topics covered in law school; nor is law school simply a prolonged preparation for the examination. The bar examination alone cannot substitute for the intellectual development and professional acculturation that form the basis of the legal education requirement. Nor can the bar examination we administer, as rigorous and thorough as it may be, cover any of its topics with the depth and subtlety required in accredited law schools.

3. *Analysis.* As we said in *Wei Jia, supra* at 784, "Our requirement of an equivalent legal education is not to test the intellectual capabilities of an attorney who has graduated from a foreign institution, but to examine the applicant's familiarity with the fundamentals of American law. We do so because there is a strong public interest in ensuring that the license to practice law in this Commonwealth be granted to applicants only on a reasonable showing that they have demonstrated that familiarity." Our analysis of Osakwe's application thus will consider whether he has gained from education and experience the requisite familiarity with the fundamentals of American law.

The rule and the board guidelines offer a useful guide. They suggest that we think about this "familiarity with the fundamentals of American law" in two ways. First, there is an evaluation of exposure to the common-law tradition — its topical division of the law, its principles of reasoning, and its basic rules. We shall refer to this portion of the analysis as the "general" evaluation. As to that general evaluation, the guidelines provide that the board will look to see if an applicant has studied in the common-law faculty of a school in a country "whose jurisprudence rests upon the common-law tradition." Guidelines, *supra* at 8. Then there is an evaluation of exposure to American law — the "particular" evaluation. Recognizing that this requirement of particular exposure to American law may be a frequently encountered deficiency for foreign-educated applicants, S.J.C. Rule 3:01, § 3.4, permits the board to require additional course work.[7] The guidelines suggest that the board generally will require such courses to be not in the basic common-law topics, but in particularly American subjects, for example, American constitutional law, Federal courts and jurisprudence, and the Uniform Commercial Code. Guidelines, *supra* at 8. The board also considers other evidence of familiarity with American law, including a review of courses completed for credit in obtaining an LL.M. degree from an American law school, admission to practice in other United States jurisdictions, and the length and nature of practice or teaching in other United States jurisdictions. *Id.*

This evaluation of a candidate's general and particular qualifications is the way we examined the application in *Wei Jia, supra*, the most recent case in which we considered the requirements of S.J.C. Rule 3:01, § 3.4. In that case, we evaluated the credentials of an applicant who first trained in a Chinese

---

[7]Additional course work is appropriately required of applicants who have sufficient common-law education to satisfy the general analysis, but may be lacking particular knowledge of American law. As we have explained, "Requiring an applicant to complete a juris doctor degree may impose a hardship on some foreign law graduates, and we do not require all foreign law graduates to receive such a degree before they may take the Massachusetts bar examination. But we do require that each foreign law graduate who seeks admission to the bar demonstrate that she or he has received an appropriate legal education in the fundamentals of American law." *Wei Jia, supra* at 787.

law school. He then received advanced degrees from Tulane Law School and was admitted to the bar in both Louisiana and New York. *Id.* at 778-779. Although he spent a significant amount of time studying at an American law school, Wei Jia's courses at Tulane focused almost exclusively on international business transactions, and included only one of the basic J.D. courses, contracts.[8] *Id.* at 784. In rejecting Wei Jia's petition, we observed:

> "If greater similarities existed between the law of the People's Republic of China and our law; if the former were based on the English common-law system, which it is not; if the petitioner, as a graduate student at Tulane, had taken for credit and passed more of the courses required of a juris doctor degree, which he has not; if the petitioner had engaged in the practice of law in Louisiana or New York for some substantial period of time, which he has not, this would be a different case."

*Id.* at 787-788. Osakwe presents one particular example of the "different case" to which we alluded in *Wei Jia, supra.* All of the reasons listed for denying Wei Jia's petition suggest that Osakwe's petition should be allowed.

Nigeria, like Massachusetts, has a legal system derived from the English common-law tradition. Students who train in Nigerian law schools are educated in that tradition.[9] A review of Osakwe's transcripts reveals that he has taken a wide array of courses, many of them offered as part of the core curriculum at ABA-approved law schools. His transcript from the University of Nigeria shows courses in property, torts, contracts, evidence,

---

[8]The petitioner in the *Wei Jia* decision had apparently audited several other basic J.D. courses, and had taken a brief "introductory course" in American law. We wrote that "[t]he three-week introductory course to the American legal system that he completed is not a substitute for a semester or more of study and examination in the substantive areas surveyed in that course." *Wei Jia, supra* at 784. We also noted that "the 'audit' of a course is not equivalent to enrolling in a course, taking an examination, and receiving a passing grade. The board, and this court, would be hard pressed to evaluate a candidate who claimed to have 'audited' courses where the candidate's familiarity with the subject matter has not been tested." *Id.*

[9]Osakwe has in fact attended four different common-law faculties — two in Nigeria, a third in Trinidad and Tobago, and a fourth in Connecticut — earning three degrees and a certificate.

constitutional law, land law, equity, jurisprudence, company law, international law, and commercial law. His transcript from the Nigerian Law School shows further courses in civil procedure, criminal procedure, company law, evidence, and the completion of a general paper on law and ethics. Wei Jia, in contrast, had completed none of these courses.

We recognize that a candidate cannot satisfy our educational requirement simply by showing that he has taken courses named, for example, "property" and "contracts." There must be further evidence that these courses expose students to rules, principles, and modes of reasoning similar to those in ABA-accredited law schools. Osakwe has submitted course descriptions from his Nigerian schools that convince us that his initial common-law training was similar not just in name, but also in substance, to that found in ABA-approved schools. This is not to say that Osakwe's education was the same as that of lawyers with an American J.D., in that his common-law courses in Nigeria would not have delved into the particular way that the tradition has developed here. We are, however, satisfied that Osakwe's education has given him sufficient exposure to the common-law tradition to satisfy the "general" portion of our analysis under S.J.C. Rule 3:01, § 3.4.

Osakwe has also shown that he has sufficient education in and exposure to American law to satisfy our "particular" analysis under S.J.C. Rule 3:01, § 3.4. Our conclusion on this point is based in part on Osakwe's LL.M. training at the University of Connecticut School of Law. His transcript from that program shows graded course work in American civil procedure, American criminal procedure, immigration law, Federal taxation, torts, and United States law and legal institutions. In contrast, Wei Jia audited his common-law classes, and his graded LL.M. courses consisted entirely of international business law classes. *Wei Jia, supra* at 784. Whatever deficiencies there may have been in Osakwe's exposure to American law in particular were, we think, cured by his LL.M. program in a way that Wei Jia's deficiencies distinctly were not.[10]

Additionally, we find Osakwe's admission and practice in

---

[10]We reject the board's argument that Osakwe is unqualified to sit for the bar examination because, in pursuit of his LL.M. degree, he "completed

other American jurisdictions to be relevant to the particular analysis and helpful (although not conclusive) to his claim. In *Wei Jia, supra* at 788, we stated that "if the petitioner had engaged in the practice of law in Louisiana or New York for some substantial period of time . . . this would be a different case." In contrast to Wei Jia, the record evidence here shows that Osakwe was not only admitted to the New York bar and the Federal bar in the District of Connecticut, but that he also has actively practiced law in those courts for the past three years.[11]

Our evaluation of Osakwe's educational qualifications has revealed that he has sufficient general exposure to the common-law tradition and specific knowledge of American law. We hold that he satisfies the equivalence requirements described in S.J.C. Rule 3:01, § 3.4. We refer Osakwe's application to the board with instructions that he be allowed to sit for the bar examination.

*So ordered.*

---

courses in only two of the eighteen subjects that applicants are required to be familiar with when taking the law examination." Not only does this ignore the fact that Osakwe took courses in five of these topics as part of his Nigerian law degree, it also implies that all candidates for the Massachusetts bar holding an American J.D. degree have taken these courses. But much of the preparation done by those sitting for the bar examination involves learning topics not usually studied in J.D. programs.

[11]The board contests the relevance of Osakwe's legal practice experience by stating that it was "limited to 'the practice of Immigration Law and Federal Law.' " The board may be relying on language in *Wei Jia, supra* at 785, where we stated that "[w]hile admission to practice in other jurisdictions is not wholly irrelevant, in this case [Wei Jia] has never actually practiced . . . ." We find the extent and nature of Osakwe's practice substantively different from Wei Jia's. Wei Jia "never actually practiced," as Osakwe has.