Ross E. Mitchell *vs.* Board of Bar Examiners.

Suffolk. September 3, 2008. - November 20, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Attorney at Law,* Admission to practice, Bar application, Educational requirements. *Board of Bar Examiners. Supreme Judicial Court,* Membership in the bar.

This court exercised its equitable power to waive the requirement of S.J.C. Rule 3:01, § 3.3, that a person seeking to sit for the Massachusetts bar examination have graduated from a law school that has been approved by the American Bar Association (ABA), where the applicant's record (i.e., that he was a graduate with highest honors of a wholly online law school that was authorized by the State of California to grant the degree of juris doctor, and an admitted member of the bars of California and the United States Court of Appeals for the First Circuit) satisfied the purpose of the rule, which is to insure an appropriate level of legal education; and where the ABA recently undertook a comprehensive review of its approval standards to consider online distance learning. [585-589] Ireland, J., dissenting.

Civil action commenced in the Supreme Judicial Court for the county of Suffolk on November 20, 2007.

The case was reported by *Spina,* J.

*Ross E. Mitchell,* pro se.

*David A. Guberman,* Assistant Attorney General, for Board of Bar Examiners.

Botsford, J. This bar admission matter comes before us on a reservation and report by a single justice of this court. The plaintiff, Ross Mitchell, is a 2004 graduate of Concord Law School (Concord), a wholly online law school that is authorized by the State of California to grant the degree of juris doctor. Mitchell is also a member of the California bar, having taken and passed that State's bar examination in 2004. Because Mitchell holds his law degree from a school that, by virtue of its online character, does not qualify for accreditation or approval by the American Bar Association (ABA), Mitchell fails to satisfy the

requirement of our rule governing eligibility to take the Massachusetts bar examination. See S.J.C. Rule 3:01, § 3.3, as appearing in 382 Mass. 754 (1981).[1]

After his first efforts to obtain permission to take the bar examination failed, Mitchell filed this action against the Board of Bar Examiners (board) in the county court, challenging the constitutionality of rule 3:01, § 3.3, as applied to him and, in the alternative, seeking an amendment to that rule or a waiver of the rule in his case. We conclude that in the particular circumstances of this case, Mitchell's request for a waiver should be granted.

1. *Background.*[2] Mitchell graduated from high school in 1969 and has been a resident of Massachusetts since 1981, working as a computer systems and management consultant. In April of 2000, he began study at Concord, an entirely online law school owned by Kaplan, Inc., which in turn is owned by the Washington Post Company. At all relevant times, Concord was authorized by the California bureau for private postsecondary and vocational education to grant, inter alia, a degree of bachelor of science in law and a degree of juris doctor. See Cal. Educ. Code §§ 94900-94905, as in effect through December 31, 2007.

In July of 2002, Mitchell received his undergraduate degree, a bachelor of science in law, from Concord, and in July, 2004, he received his juris doctor degree from the same institution. In connection with the law degree, Mitchell graduated with "highest

---

[1]Supreme Judicial Court Rule 3:01, § 3.3, as appearing in 382 Mass. 754 (1981), provides as follows:

> "Each applicant shall have graduated with a degree of bachelor of laws or juris doctor from a law school which, at the time of graduation, is approved by the American Bar Association or is authorized by statute of the Commonwealth to grant the degree of bachelor of laws or juris doctor."

In addition to not being approved by the American Bar Association (ABA), Concord School of Law (Concord) is not authorized by a Massachusetts statute to grant a bachelor of laws or juris doctor degree. The Massachusetts School of Law and the Southern New England School of Law, both located in Massachusetts, are the only two law schools that are not approved by the ABA but are authorized by the Massachusetts board of higher education and State statute (see G. L. c. 69, § 31A) to grant such degrees.

[2]The record includes the parties' statement of agreed facts. The facts set forth in the text are taken from that statement and its accompanying exhibits.

honors," and was the class valedictorian.[3] Following his graduation, he sat for and passed the California bar examination, and was admitted to the bar of California in November, 2004.[4] He was admitted to practice before the United States Court of Appeals for the First Circuit in December, 2004, and before the United States District Court for the Central District of California in March, 2005.

In October of 2005, Mitchell wrote to the chair of the board to discuss how he might be granted permission to sit for the Massachusetts bar examination, given that S.J.C. Rule 3:01, § 3.3, requires graduation from a law school approved by the ABA as a condition of eligibility to sit for the examination, and Concord is not ABA-approved. When the chair responded that the board had no authority to waive the court's rules, Mitchell wrote the court's rules committee in March, 2006, to request permission to sit for the bar examination in Massachusetts, based on his law school education at Concord and his admission to the California bar. The rules committee denied his request. Mitchell then asked for reconsideration, and in the alternative requested an amendment to S.J.C. Rule 3:01, § 3.3, to permit attorneys admitted to practice in other States who had graduated from domestic law schools authorized by State statute to grant a law degree but not approved by the ABA to sit for the Massachusetts bar examination. The rules committee denied the motion for reconsideration but, in response to the request for a rule amendment, convened a working group comprising law school faculty, administrators, and a member of the board to consider the matter. In or around December, 2006, the working group recommended that no amendment to the court's bar admission rules be adopted at that time, and this court accepted the group's recommendation. However,

---

[3]Mitchell took the multistate professional responsibility examination (MPRE) in March of 2003, and received a scaled score of 127. The Board of Bar Examiners (board) requires that each Massachusetts bar examination applicant have passed the MPRE with a scaled score of eighty-five or greater before taking the bar examination.

[4]The State of California permits individuals who have received their legal education "[b]y instruction in law from a correspondence law school authorized or approved to confer professional degrees by [California]" to sit for the California bar examination. See Cal. Bus. & Prof. Code § 6060 (West 2003). The record indicates that Concord was classified as a California correspondence law school, authorized to confer the juris doctor degree.

the court agreed to, and did, request the ABA "to give attention to the issue of distance learning, with a view towards incorporating online methodologies into the [ABA's] Standards for Approval of Law Schools." Thereafter, in November of 2007, Mitchell commenced this action in the county court.

The ABA has been approved by the United States Department of Education as the national agency responsible for accrediting programs that lead to the bachelor of laws or juris doctor degree. To perform its work in the area of approving law school programs, the ABA has adopted "Standards for Approval of Law Schools" (approval standards). The approval standards currently in effect were adopted in 2006. They provide in part that an approved law school program may only allow four credits per term to be taught at a distance, and a total of twelve credits for an entire program. They also require that a law school have a physical library, and have fixed facilities. As a wholly online program, Concord does not and cannot meet any one of these standards.

In August, 2008, the ABA announced that in September, 2008, it would begin a comprehensive review of the approval standards.

2. *Discussion.* Mitchell argues that by requiring graduation from an ABA-approved law school in order to sit for the Massachusetts bar examination, S.J.C. Rule 3:01 violates the equal protection guarantees of the Massachusetts Declaration of Rights in two ways.[5] The first way relates to the differences in the law school education requirements for attorneys licensed to practice law in another State who seek admission to the Massachusetts bar by taking the bar examination, on the one hand, and the requirements applicable to out-of-State licensed attorneys who seek admission to the Massachusetts bar on motion, on the other[6]; the

---

[5]The board argues that it is not necessary to consider any issue concerning application of S.J.C. Rule 3:01, § 3.3, to Mitchell in this case, because he does not meet S.J.C. Rule 3:01's requirement concerning completion of college. See S.J.C. Rule 3:01, § 3.2, as appearing in 382 Mass. 753 (1981) ("Each applicant [for admission by examination] shall have completed the work acceptable for a bachelor's degree in a college or university, or have received an equivalent education in the opinion of the Board"). The board is not correct. In the statement of agreed facts, the board stipulated that Mitchell "received his undergraduate degree, Bachelor of Science in Law, from Concord in July 2002." We read this stipulation as indicating compliance with rule 3:01, § 3.2, and therefore we focus on rule 3:01, § 3.3.

[6]Mitchell's specific contention is that under S.J.C. Rule 3:01, § 3.3, an

second is by treating differently, again in relation to law school education requirements, attorneys who have received their legal training in a United States-based law school that is not approved by the ABA and attorneys who received legal training in a foreign law school that also is not approved by the ABA.[7] We do not reach these constitutional arguments, since we decide the case on other grounds.[8]

This court has the equitable power to waive a particular requirement of a court rule concerning admission to the bar. See *Matter of Tocci*, 413 Mass. 542, 546 (1992) (*Tocci*); *Novak* v. *Board of Bar Examiners*, 397 Mass. 270, 274 (1986) (*Novak*). In Mitchell's particular case, two considerations combine to persuade us that we should waive the law school accreditation requirement set out in S.J.C. Rule 3:01, § 3.3. The first of these concerns Mitchell himself, and the record he presents of his educational accomplishments in the field of law.

Our bar admission rules have long included the requirement that a United States-trained applicant seeking admission to the bar through the bar examination graduate from a law school accredited by the ABA; many other States have the same require-

___

attorney who does not qualify for admission on motion — because, for example, he has not been admitted to practice in another State for at least five years (see S.J.C. Rule 3:01, § 6.1.1, as appearing in 433 Mass. 1301 [2001]) — must take the bar examination for admission to the Massachusetts bar, and is required to have graduated from an ABA-approved law school or from a school that is "authorized *by statute of the Commonwealth* to grant the degree of bachelor of laws or juris doctor" (emphasis supplied). (As previously noted, Concord does not satisfy this condition.) However, under S.J.C. Rule 3:01, § 6.1.4, as appearing in 425 Mass. 1301 (1997), an attorney licensed in another State who is eligible for admission on motion satisfies the educational requirement for admission if he graduated from a law school that is either approved by the ABA or "authorized *by a state statute* to grant the degree of bachelor of laws or juris doctor" (emphasis supplied). (Concord meets this criterion because it was authorized by California statute to grant the degrees of bachelor of laws and juris doctor.)

[7]Mitchell argues in this regard that under S.J.C. Rule 3:01, § 3.3, an attorney who receives his legal training in the United States cannot take the bar examination if he did not graduate from a school approved by the ABA, while the foreign-trained attorney may do so as long as the board determines that the attorney received a legal education in a program that, although not approved by the ABA, was equivalent to that offered in an ABA-approved law school. See S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981).

[8]For the same reason, we do not consider Mitchell's alternative suggestion that we amend S.J.C. Rule 3:01, § 3.3.

ment. See National Conference of Bar Examiners and ABA Section of Legal Education and Admissions to the Bar, Comprehensive Guide to Bar Admission Requirements Chart III (2008).[9] And we have noted that "there is a 'direct rational connection between the requirement of graduation from an accredited law school and an applicant's fitness to practice law.' " *Wei Jia* v. *Board of Bar Examiners*, 427 Mass. 777, 783 (1998) (*Wei Jia*), quoting *Tocci*, 413 Mass. at 548. See *Osakwe* v. *Board of Bar Examiners*, 448 Mass. 85, 89 (2006) (*Osakwe*). The ABA approval requirement, however, is not an end in itself, but rather a practical way to ensure generally that prospective attorneys have received an adequate level of appropriate legal education. *Tocci*, *supra*. See *Osakwe*, *supra*. Nevertheless, ABA accreditation is not the only method we use to evaluate educational proficiency. For example, because the ABA does not accredit foreign law schools or programs, the board, and in some instances this court as well, must examine and evaluate the quality and sufficiency of each foreign-trained applicant's legal education without the assistance provided by ABA approval. S.J.C. Rule 3:01, § 3.4, as appearing in 382 Mass. 754 (1981). See *Osakwe*, *supra* at 89, 91-94; *Wei Jia*, *supra* at 782-784, 787-788.

The record contains quite specific information about the required and elective courses that Mitchell took as a law student at Concord — the course subjects, an overview of topics covered, and the legal texts and authors that were used — as well as a description of the extensive online research resources that were available to him. Our review of these materials indicates that

---

[9]This court noted in 1986 that "the vast majority of States" had adopted the requirement that a person who receives legal training in the United States and seeks admission by taking the bar examination have attended an ABA-approved law school. *Novak* v. *Board of Bar Examiners*, 397 Mass. 270, 273 (1986). Changes may be occurring. In 2008, there are a number of jurisdictions that allow exceptions to this rule, including study at a State-approved out-of-State law school (nine jurisdictions); study at a State-approved in-State law school (eight jurisdictions); law office study (seven jurisdictions); correspondence study (three jurisdictions); study at any law school (two jurisdictions); graduation from an unapproved law school combined with a certain number of hours at an ABA-accredited law school (one jurisdiction); and study at an ABA-accredited law school resulting in an LLM (one jurisdiction). National Conference of Bar Examiners and ABA Section of Legal Education and Admissions to the Bar, Comprehensive Guide to Bar Admission Requirements Chart III (2008).

Mitchell's core course of study, and legal research resources, were substantively very similar to the core content offered by ABA-approved law schools. See *Osakwe*, 448 Mass. at 92-93. Moreover, and of great importance, the record reveals that Mitchell achieved an exemplary degree of success as a law student. Thus, he won "outstanding achievement" awards in three of his first year courses, an award for best oral advocate and best brief in his moot court exercise in the third year, and over-all academic honors in all four of his law school years, graduating with highest honors and as valedictorian of his class in July of 2004.[10] Finally, we find the following factors significant: (1) the State of California, through its bureau for private postsecondary and vocational education, had specifically approved Mitchell's law school, Concord, to grant a juris doctor degree at the time Mitchell was a student; (2) Mitchell has taken and passed the California general bar examination and did so the first time he took it; (3) Mitchell has taken and passed the multistate professional responsibility examination with a scaled score well above that required by the board (see note 3, *supra*); (4) he has been admitted to practice both in California and before the United States Court of Appeals for the First Circuit; and (5) Mitchell, who has represented himself throughout this case, filed briefs and gave an oral argument in this court that were of commendable quality, providing us with a concrete and positive illustration of his skills in legal analysis, legal writing, and advocacy. In sum, we are persuaded that in Mitchell's case, the underlying purpose of our ABA approval requirement — to insure an appropriate level of legal education — has been met.

Mitchell's personal record, as excellent as it is, would not be a sufficient reason in itself to waive the ABA approval requirement of S.J.C. Rule 3:01, § 3.3; if it were, the exception might well swallow the rule. See *Tocci*, 413 Mass. at 545. But Mitchell's record of educational achievement is only one of two considerations that we take into account on the issue of waiver. That second consideration, which relates to the current status of the

---

[10]During his final year of law school, Mitchell served as a law clerk intern for an experienced judge on the United States District Court for the District of Massachusetts; a highly positive letter of recommendation from the judge is also included in the record.

ABA's approval standards, plays a significant part in our determination.

As has been mentioned, the ABA, through its Section of Legal Education and Admissions to the Bar, has recently announced that it is undertaking a comprehensive review of its approval standards. Information supplied by the ABA indicates that the comprehensive review will include consideration of schools and programs using online distance learning, an issue that has concerned this court. As the comprehensive review begins, we have no way of knowing or predicting what recommendations, if any, will be forthcoming in relation to online legal education programs or methodologies. However, in view of the fact that an online legal education program such as Concord's cannot qualify for ABA approval under the current ABA standards[11] and that the situation with respect to online programs may change in the reasonably near future, equitable considerations weigh in favor of granting Mitchell a waiver of the ABA approval requirement in this case — given the evidence that he has satisfied the educational purposes of the rule. Cf. *Novak*, 397 Mass. at 274 (where court's ABA accreditation rule changed following plaintiff's graduation from law school, and new rule rendered him ineligible to take bar examination, interests of equity and justice were served by granting plaintiff waiver from new rule where, in his case, educational purpose of new rule was met).

Our determination that a waiver of S.J.C. Rule 3:01, § 3.3, is appropriate for Mitchell is based wholly on the particular circumstances presented in his individual case. In reaching this result, we are not suggesting that we have decided to accept graduation from an online law school as meeting the educational requirement for taking the Massachusetts bar examination, or indeed to change our ABA-approval requirement set out in rule 3:01, § 3.3, in any respect. Rather, we will await the results of the ABA's comprehensive review of its law school approval standards and evaluate rule 3:01, § 3.3, in light of any new standards the ABA may adopt as well as of ongoing developments in legal education and its delivery.

---

[11] In this respect, online programs have something in common with foreign legal education programs. See, e.g., *Matter of Tocci*, 413 Mass. 542, 549 (1992).

3. *Conclusion.* We refer Mitchell's application to the board with instructions that he be allowed to sit for the bar examination.

*So ordered.*

IRELAND, J. (dissenting). I write separately because I disagree with the court's conclusion that, given the American Bar Association's (ABA's) pending comprehensive review of schools and programs using online distance learning, equitable considerations weigh in favor of granting the plaintiff a waiver to sit for the Massachusetts bar examination. I would await the results of the ABA's review.

As the court discusses, *ante* at 584-585, a working group was convened in response to this plaintiff's request that S.J.C. Rule 3:01, § 3.3, as appearing in 382 Mass. 754 (1981), be amended to permit attorneys to sit for the Massachusetts bar examination if they are admitted to practice in other States and were graduated from American law schools that, although not ABA-approved, are authorized by State statute to grant law degrees. In 2006, this court accepted the group's recommendation that no amendment to our rule be adopted. We did however, request the ABA to give consideration to the issue of online distance learning when setting standards for ABA approval.

Thus, this court's consideration of the issue this plaintiff presents has been thorough. One must assume that our decision to keep intact our own rule requiring that an applicant for the bar examination graduate from an ABA-approved law school was because we took seriously our statements that ABA approval serves an important function. *Matter of Tocci*, 413 Mass. 542, 548 (1992), quoting *LaBossiere* v. *Florida Bd. of Bar Examiners*, 279 So. 2d 288, 289 (Fla. 1973) (court relies on ABA accreditation because it provides objective method of determining quality of legal education, and financial limitations and other business make judiciary unequipped to conduct own evaluation). I see no reason to abandon our reliance on the ABA accreditation standards at this particular point in time.[1]

Moreover, the facts in this case are distinguishable from the

---

[1]Information contained in the record appendix reveals that, in Massachusetts, the over-all pass rate for the 2007 bar examination was 77% with an 82% pass

facts in *Novak* v. *Board of Bar Examiners*, 397 Mass. 270 (1986), the case cited by the court for its conclusion that the equities weigh in the plaintiff's favor. *Ante* at 589. The *Novak* decision concerned the 1980 amendment to S.J.C. Rule 3:01, § 3.3, as amended, 380 Mass. 942 (1980), which stated that, in order to sit for the Massachusetts bar, an applicant's law school had to be accredited at the time the applicant was graduated. *Id.* at 270-271. Novak was graduated from his unaccredited law school in 1977. *Id.* at 271. However, the school was accredited three years later, in 1980. *Id.* In 1983, when Novak applied to sit for the Massachusetts bar examination, the question before the court was whether it was in the interest of equity and justice not to hold Novak to the 1980 amendment, where Novak reasonably anticipated ABA approval at the time of his graduation, and where two other applicants from Novak's graduating class had been granted permission to take the Massachusetts bar examination (in 1978 and 1980). *Id.* at 271-274.

Here, because of present ABA standards, there is no imminent ABA approval. *Ante* at 582, 585. Indeed the court states that the ABA process of reviewing its current standards has just begun. *Ante* at 585. In addition, the plaintiff here does not state that he was somehow unaware of the hardships he could face when he chose to enroll in an unaccredited law school. See *Matter of Tocci, supra* at 545, 547 (denying waiver to sit for bar examination even though fact that applicant had to attend different law school from accredited one he enrolled in was not his fault; applicant made informed decision to attend unaccredited law school and recognized difficulty he would face).

The plaintiff points out, among other things, that his career made it more convenient to attend law school online and that his law school was significantly less expensive than traditional law schools. These considerations are hardly extraordinary. Many people give up careers, or attend law school while working fulltime, all the while incurring great costs to themselves, financially and otherwise. Presumably part of the calculation of those who choose to incur those costs is that, to do otherwise, would be to incur a risk they would rather not take.

rate for students from ABA-accredited schools and a 38% pass rate for students from schools that were not ABA-accredited.

Finally, I conclude that the court's claim that it can limit its holding to the circumstances in this case is illusory. We do not know when the ABA will complete its review or, more importantly, what the result will be. The review for the current 2006 ABA standards began in 2003. As noted, the new ABA review has just begun. In the interim, I am concerned with the potential for having to assess large numbers of graduates from other online law schools.

For these reasons, I respectfully dissent.