In re Petition of Douglas P. BUSCH, et al., to Waive the Bar Admission Requirement of Graduation from an ABA-Accredited Law School.

No. 52006.

Supreme Court of Minnesota.

Dec. 17, 1981.

Rehearing Denied Jan. 28, 1982.

Peterson Popovich Knutson & Flynn, Peter S. Popovich and Patricia A. Maloney, St. Paul, for petitioners.

Gislason, Dosland, Hunter & Malecki and C. Allen Dosland, New Ulm, for respondent.

SHERAN, Chief Justice.

Petitioners are 20 graduates of the Butler School of Law. They invoke the original jurisdiction of this court pursuant to Rule XII of the Rules Governing the Conduct of Attorneys. Specifically, petitioners claim that Rule II A(3),[1] Supreme Court Rules for Admission to the Bar, adversely affects them. A waiver of Rule II A(3) is sought.

In the fall of 1975, Minnesota State College of Law opened its doors. Students were attracted through an advertising campaign and the fact that several prominent local attorneys, including Harry Peterson, former state attorney general and Minnesota Supreme Court Justice, were on the faculty. Former Justice Peterson served as dean. Incoming students were informed that the school was not accredited by the ABA, but the school bulletin stated that approval was being actively sought. Students were subsequently informed by the administration that the law school was on a sound financial basis and that the hope of accreditation rested with former Justice Peterson, one of the founders of what eventually became the Hamline University School of Law. Classes were held in the Flour Exchange Building in Minneapolis.

During the fall of 1976, Mr. Keith Torgerson became the new dean of the school. He informed students that the outlook for accreditation was favorable. Several months later, the dean announced that two members of the ABA who had assisted the accreditation prospects of other fledgling law schools had agreed to become consultants to the law school. The dean informed students that one of these men believed that provisional accreditation could be attained in one year. In fact, the two men had not agreed to become consultants, and neither had predicted accreditation.

Furthermore, a report by a special committee of the Hennepin County Bar Association, in September 1976, concluded that the school was nowhere near provisional accreditation. In the opinion of the committee the law school failed to meet a number of ABA standards: failed to complete a comprehensive feasibility study; failed to find outside financial support in addition to tuition; failed to employ any of the four required full-time faculty members; and failed to acquire more than 12,000 of the 60,000 required library volumes. The committee did observe, however, that representations in advertising and in the school bulletin "could mislead" prospective students as to the prospects of provisional ABA accreditation.

---

1. Rule II A reads in relevant part:

    A. No person shall be admitted to practice law who has not established to the satisfaction of the State Board of Law Examiners:
      (1) That he or she is at least 18 years of age;
      (2) That he or she is a person of good moral character;
      (3) That he or she has graduated from an approved law school; *

      (4) That he or she has passed a written examination for admission to the bar of Minnesota.

---

    * An approved law school is a law school that is provisionally or fully approved by the Section of Legal Education and Admissions to the Bar of the American Bar Association.

A majority of students, convinced that the law school was not taking the steps necessary to achieve accreditation, decided to leave the school. On April 19, 1977, the Butler School of Law was incorporated and accepted all transfer students from the defunct Minnesota State College of Law. No classes were missed during this transition period, and all but one of the faculty members joined the faculty at Butler.

The Butler Board of Directors immediately set out to obtain provisional ABA accreditation. While the law school apparently succeeded in establishing a traditional legal curriculum through the use of part-time instructors, the school was unsuccessful in soliciting an endowment and affiliation with a 4-year college.

Because tuition alone could not generate the funds needed to meet ABA faculty, library, and administrative requirements, the Board of Directors decided to cease admitting new students and to close the school. Before this decision was made, the Minnesota Higher Education Coordinating Board inspected Butler and granted a conditional 1-year provisional approval on December 20, 1978. The conditions set out by the Board were never met.

Petitioners graduated from Butler on July 15, 1980, receiving Juris Doctor degrees. The school ended its existence on July 31, 1980. Since graduation, several petitioners have taken and passed the professional responsibility portion of the multistate bar examination. The petitioners claim that they are able to meet the requirements of Rule II and will make prompt application to take the Minnesota bar examination if the present petition is granted.

■ We must determine whether the facts presented by petitioners justify a waiver by this court of Rule II A(3), which requires graduation of bar applicants from an ABA-approved law school. We hold that they do not.

This court has determined by Rule II A(3) that a high-quality legal education is a general prerequisite to admission to the bar of Minnesota. This requirement is clearly related to our recognized interest in insuring that members of the bar are worthy of public trust with regard to their professional competence. It is reasonable to require proof that an applicant for admission possesses such an education. *Application of Hansen*, 275 N.W.2d 790, 796 (Minn.1978). As this court noted in *Hansen*, we have made the rational decision to follow the standards of educational excellence developed by the Section of Legal Education and Admissions to the Bar of the American Bar Association. 275 N.W.2d at 796–97. We have neither the time, the staff, nor the expertise to make an individual determination as to whether the 173 ABA-accredited law schools or the increasing number of unaccredited law schools across the country meet and maintain those standards. We have chosen, therefore, to rely on the ABA accrediting process, in which we have confidence, and to require ABA accreditation of those law schools whose graduates will become our practicing lawyers.

Petitioners do not question the reasonableness of this requirement. They ask instead that we waive that requirement. They base their request on three grounds: (1) that they have been precluded from attending an approved Minnesota law school because of the tremendous number of law school applicants; (2) that they were misled into believing that Butler School of Law would become accredited; and (3) that they received a quality education at great expense.

It is true that with three applicants or more for every seat in the three accredited law schools of this state the number of disappointed applicants is great and may regrettably include those who would make good lawyers. The record contains no support, however, for petitioners' claim that they were misled into believing that Butler School of Law would become accredited. All of the petitioners admit knowing that neither Minnesota State College of Law nor Butler School of Law were either provisionally or fully approved by the ABA. The Butler catalogue of 1977–79 clearly sets out the school's status with regard to accredita-

tion and the adverse consequences its non-accreditation would have on the aspirations of its graduates to take bar examinations in most jurisdictions. Only hope could blind a student to this statement: "The school makes no representations as to any applicant that it will be approved by the American Bar Association prior to the graduation of any matriculating student." Butler recommended that its students make direct contact with the admitting agency. None of the students sought the advice and counsel of the State Board of Law Examiners before continuing to expend funds for a legal education which the Board would have told them did not qualify them to take the Minnesota Bar Examination. They were not misled by the Board or this court into believing that they would be allowed to take the bar examination.

■ Petitioners may meet or exceed the legal educational standards of 30 years ago, but they did not receive a legal education of the quality this court requires of today's bar applicants. At the core of an effective program of legal education must be at least six full-time law school faculty members and a law library adequate to support the law school's educational program.[2] Standards 402 and 601, ABA Standards and Rules of Procedure for the Approval of Law Schools and Interpretations. Butler was never able to meet these requirements and never made application for ABA approval. Our decision in *Hansen* is controlling in this case. To decide otherwise would raise equal-protection problems for future cases. The petition is denied.

Petition denied.

YETKA, Justice (dissenting).

I respectfully dissent. As I set forth in my earlier dissent in *Application of Hansen*, 275 N.W.2d 790 (1978), there are situations where a waiver of the requirement of graduation from an ABA-accredited law school should be granted. The applicants before this court have an even stronger case for a waiver.

First, the instructors were experienced, practicing attorneys who are licensed by the State of Minnesota and who are familiar to this court. Nearly all of the instructors were taken from a presently accredited law school located in this state. In addition, the location of Butler School of Law is in Minnesota. Under these circumstances, it is easier for us to measure the effectiveness of the instructors and the quality of petitioners' legal education.

Second, both students and faculty did everything possible to receive accreditation and to avoid misleading any new student.

Third, it appears that the main reasons accreditation did not occur were that the school lacked a library meeting ABA standards and an endowment program. In view of the fact that there are four excellent law libraries in the metropolitan area, the lack of a complete law library does not appear to be a significant reason to deny a waiver. Moreover, financial difficulties are not unique to this school, but are common throughout the entire spectrum of educational institutions. I believe we should allow the applicants to take the bar exam because of the unique facts of this case.

SIMONETT, Justice (dissenting).

I join in Justice Yetka's dissent.

OTIS, Justice (dissenting).

I join in Justice Yetka's dissent.

---

2. When a law school library collection is inadequate in terms of total volumes and the depth and breadth of the collection, Standard 601 cannot be satisfied by stating that the students have access to other law libraries within the region. Interpretation 3 of Standard 601.