**In re Sara PANIAGUA DE APONTE.**

**No. 2012–SC–000020–CF.**

Supreme Court of Kentucky.

April 26, 2012.

---

### *OPINION AND ORDER*

The Applicant, Sara Paniagua de Aponte, received her legal basic education in the Dominican Republic. She then completed a Master of Laws, or LL.M., degree at Georgetown University Law Center. She has recently been admitted to practice law in the state of New York and the United States District Court for the Southern District of Indiana. She has applied to take the Kentucky bar examination, but the Board of Bar Examiners denied her application because she did not meet the requirements of SCR 2.014, which governs the legal education requirements of domestic and foreign-educated applicants who seek to take the bar examination.

She now seeks review of that decision by this Court, arguing that her LL.M. is the equivalent of a J.D., which would make her directly eligible to take the bar examination under SCR 2.014(1), or alternatively that she should be granted a waiver of the requirements of SCR 2.014(3), which governs foreign-educated applicants. Because the Applicant simply does not meet the requirements of the rules, and this Court is not convinced that her legal education and experience warrant a waiver of the rules' requirements, her motion must be denied.

### I. Background

The Applicant is from the Dominican Republic, where she attended the Universidad Iberoamericana Escuela de Derecho

("School of Law") in Santo Domingo from August 2003 to July 2007. There she undertook 201 credit hours of legal studies toward her degree, performed well (with a 3.9/4.0 G.P.A.), and eventually earned a *Licenciada en Derecho*, which appears to be the primary law degree in many Spanish-speaking countries. The degree appears, at least in the Dominican Republic, to be an undergraduate degree [1] and focuses on civil law, not the common law tradition. The Applicant was thereafter licensed to practice law in the Dominican Republic in 2008.

Soon after graduating, she moved to the United States with her husband, and was admitted to the LL.M. program in International Legal Studies at Georgetown University Law Center, an ABA-accredited institution.[2] The Applicant, who is fluent in English, earned her LL.M. in May 2008 with a 3.06 G.P.A. After completing her degree, she began studying to take the New York bar examination, which she took in July 2010.[3] During that time, she continued to live in Washington, D.C., where her husband worked for the Dominican Republic's diplomatic mission to the United States. In December 2010, she and her husband moved to Louisville, where her husband began graduate studies at the Southern Baptist Theological Seminary. Around that time, the Applicant found that she had passed the New York bar examination (on her first try), and she was sworn in to that bar in June 2011. The next month, she was admitted to the federal bar in the Southern District of Indiana.[4]

The Applicant then sought the right to take the Kentucky bar examination. In November 2011, she presented information to the Board of Bar Examiners about her legal education and admission in other jurisdictions. In December 2011, the Board denied her request, stating that a J.D. or equivalent from an accredited American law school is a prerequisite to admission to the bar under SCR 2.014(1), that the "LL.M. degree is not the equivalent of a J.D. from an ABA-accredited law school" under SCR 2.014(1), and that she did not meet the alternative requirements of SCR 2.014(3) for foreign legal education because she did not meet the three-year practice requirement. The Board did not evaluate whether her degree earned in the Dominican Republic was the educational equivalent of an American degree, stating, "The practice requirement must be met before the Board will evaluate your legal education." Under this reasoning, the Board

1. For example, in addition to courses in law, the Applicant took courses in French, Sociology, Math, Statistics, and Environmental Science.

2. For a description of this program, see *Lawyers Educated Outside the U.S.*, Georgetown Law, http://www.law.georgetown.edu/graduate/foreign.cfm (last visited April 10, 2012).

3. It is not clear why the Applicant did not take the New York examination until two years later, but it may have been because New York takes some time to process the applications of foreign-educated applicants. The extra time to process those applications is likely a result of needing to evaluate the applicant's educational credentials.

4. Apparently, unlike in some other federal courts, membership in the bar of the United States District Court for the Southern District of Indiana is not limited to members of the state's bar; instead, an attorney need only be "admitted to practice by the Supreme Court of the United States or the highest Court of any state." S.D. Ind. LR. 83.5(b). Whether practicing law in that court without also being admitted to the bar of the Indiana state courts constitutes unauthorized practice of law in Indiana is not clear. The Indiana Supreme Court controls admission to its state bars and has the power to enjoin persons engaged in such unauthorized practice within its borders. *See* Ind. Admission and Discipline R. 24.

decided the Applicant was not eligible to sit for the bar examination.

The Applicant subsequently filed a motion for review of this decision with this Court, as allowed under SCR 2.060. The motion also asks, in the alternative, for a waiver of the rule's requirements.

## II. Analysis

The Applicant's motion poses two main questions. First, is she entitled to sit for the Kentucky bar examination under SCR 2.014? Second, if she does not meet the requirements of that rule, should she be granted a waiver?

**A. The Applicant is not eligible to take the bar examination under SCR 2.014.**

This issue actually requires analysis of two subsidiary questions: (1) whether the LL.M. from Georgetown is sufficient to allow the Applicant to take the bar examination without resort to the foreign-educated applicant requirements, and (2) assuming her LL.M. is not sufficient, whether she is otherwise qualified as a foreign-educated applicant.

*1. The Applicant's LL.M. degree is not an "equivalent professional degree" as required by SCR 2.014(1).*

■ The basic educational requirement to sit for the Kentucky bar examination is a J.D. or equivalent degree from an accredited, American law school. Specifically, SCR 2.014(1) provides: "Every applicant for admission to the Kentucky Bar *must* have completed degree requirements for a J.D. or equivalent professional degree from a law school approved by the American Bar Association or by the Association of American Law Schools." (Emphasis added.) (The remainder of the rule spells out a narrow exception to this educational requirement, which will be addressed below.)

The Applicant argues that her LL.M. degree in International Legal Studies from Georgetown, an ABA-accredited institution, is an "equivalent professional degree" that would satisfy the basic educational requirement in this state and make her eligible to sit for the bar examination.

This Court has previously denied an application by the holder of an LL.M. in taxation from a properly accredited American law school, when the applicant's J.D. was from an unaccredited American school. *See In re Teel,* 150 S.W.3d 56 (Ky.2004) (information appearing in the dissent). Though the Court issued only a one-line order denying the applicant's motion for review, it is apparent from the content of the vigorous dissent in that case that the Court was apprised of the applicant's educational background. Though the rules have been amended slightly since that case, the basic requirement of a J.D. or equivalent degree from an accredited school is the same. It is reasonable, then, to infer that this Court has previously found that an LL.M. in a narrow topic from an accredited, American law school is an insufficient equivalent degree.

Presumably, this is because an LL.M. program, like that in *Teel,* is usually a focused educational program, often with an emphasis on a single subject, whereas the J.D. degree requires a broad-ranging education in a variety of legal subjects. To obtain a J.D. degree from an American institution, almost every student will take first-year courses in torts, criminal law, contracts, property, civil procedure, and constitutional law. Additionally, most LL.M. programs can be completed in a much shorter time (usually, two semesters) than a J.D., which usually takes six full-time semesters. Thus, even those students who focus on narrow subjects in their later semesters will have had at least a basic exposure to the central pillars of

American law, and they will have received substantially more instruction from an accredited, American school. An LL.M. degree in a particular topic, with its narrow focus and shorter education, is no substitute for that initial broad exposure, even when the first law degree from an unaccredited school likely provided at least some of that exposure and lengthier education. *Cf. id.* This concern is amplified when the applicant's first law degree is from a foreign law school, where it is likely that the educational program does not (and should not) even attempt to replicate the education in an American school because the legal system in that country is very different from that in the United States.

What, then, does "equivalent professional degree" mean? It seems clear that the language "equivalent professional degree" was used in the rule, at least in part, to cover the Bachelor of Laws, or an LL.B., degree, which was the usual first law degree awarded by American law schools up until the middle of the twentieth century. Though most if not all American law schools began awarding Juris Doctor, or J.D., degrees to their graduates by the 1960s, many practicing attorneys and sitting judges hold the earlier degree.[5] We have little difficulty concluding that the rule was written with them in mind.

What is not clear, however, is whether the rule's language contemplates only those applicants with American LL.B. degrees. The Board of Bar Examiners ar-gues in its response to the Applicant's motion that if the rule was intended to include LL.M. degrees, the Court could have "explicitly stated so" in the rule. This claim, however, ignores the language of the rule, which as noted above allows for an "equivalent professional degree." No doubt the Board's response would be that this language covers only the American LL.B., which is literally the equivalent of an American J.D., as described in the preceding paragraph. But to borrow a phrase from the Board, if the Court had intended the rule only to cover J.D. and LL.B. degrees, it "would have explicitly stated so." Thus, we cannot say that an LL.M. degree could never satisfy the requirement of SCR 2.014(1), at least based on the language of the rule itself.

At least some LL.M. programs are designed specifically to offer foreign law graduates sufficient exposure to American law and to allow them to take some states' bar examinations. For example, Georgetown itself offers a General Studies LL.M. to foreign law school graduates, which is different from the International Legal Studies LL.M. earned by the Applicant.[6] Similarly, the Indiana University Robert H. McKinney School of Law offers an LL.M. program described as an "American Law for Foreign Lawyers Track,"[7] which, among other things, is intended to "create[ ] opportunities for foreign law graduates and lawyers to . . . [o]btain a degree permitting them to sit for bar examina-

**5.** For example, four of the current justices on the United States Supreme Court (Justices Scalia, Kennedy, Ginsburg, and Breyer) received LL.B. degrees instead of J.D. degrees. *See Biographies of Current Justices of the Supreme Court,* Supreme Court of the United States, http://www.supremecourt.gov/about/biographies.aspx (last visited Apr. 10, 2012).

**6.** The General Studies program is also described at *Lawyers Educated Outside the U.S.,* Georgetown Law, http://www.law.georgetown.edu/graduate/foreign.cfm (last visited April 10, 2012).

**7.** This program is described at *Master of Laws (LL.M.) Program: American Law for Foreign Lawyers Track,* Indiana University Robert H. McKinney School of Law, http://indylaw.indiana.edu/llm/american/ (last updated July 20, 2010).

tions in several American jurisdictions." And clearly some states allow such degrees to substitute for the usual educational requirements.

This Court has never ruled out the possibility that such an LL.M. degree can be an "equivalent professional degree." Indeed, in at least one case, *In re Yisa*, 297 S.W.3d 573 (Ky.2009), this Court has suggested that certain LL.M. degrees could be equivalent professional degrees. In *Yisa*, a Nigerian lawyer argued that his foreign LL.B. degree was the educational equivalent of an American law degree. In making that claim, he cited to *Osakwe v. Board of Bar Examiners*, 448 Mass. 85, 858 N.E.2d 1077 (2006), in which the Massachusetts Supreme Judicial Court allowed a Nigerian lawyer, also with a foreign LL. B., to be admitted to the Massachusetts bar. That court emphasized that "[w]hatever deficiencies there may have been in Osakwe's exposure to American law in particular were ... cured by his LL.M. program." *Id.* at 1083. The LL.M. program in question was at the University of Connecticut School of Law and included "graded course work in American civil procedure, American criminal procedure, immigration law, Federal taxation, torts, and United States law and legal institutions." *Id.* In other words, the LL.M. program approved in that case largely tracked the education that a first-year law student gets at an American law school. In *Yisa*, this Court distinguished *Osakwe* because Yisa did not have such an LL.M. degree. We noted that "[w]hile the decision of another state regarding bar admissions is certainly not binding on this Court, we find *Osakwe* instructive and conclude that Osakwe's education was equivalent to an American legal education in a way that Mr. Yisa's education was not." *Yisa*, 297 S.W.3d at 577.

Thus, the possibility remains that a general LL.M. program in American law like that in *Osakwe*—essentially, a bridge program aimed specifically at preparing foreign lawyers for practice in the United States—could be an equivalent professional degree sufficient under SCR 2.014(1). But we need not resolve that question today, as the Applicant's education at Georgetown was not such a general introduction to American law. The Applicant's LL.M. course work consisted of the following according to her transcript: Corporations, U.S. Legal Discourse, International Business Transactions, International White Collar Crime, International Commercial Arbitration, International Negotiations, Introduction to U.S. Contract Drafting, Global Commerce and Litigation, International Project Finance, and Legal Politics. While the Applicant performed admirably in this course work, earning a 3.06 G.P.A., such work cannot support the claim that the LL.M. it led to is equivalent to a J.D. The Applicant's course work, which focused on international and business law subjects, was doubly narrow, and was thus unlikely to give her a sense of American law as a whole. The only course she took that appears to fall into the core of American legal education, in the sense of being a subject of the bar exam, was her course on corporations. And while the course on U.S. Legal Discourse may have exposed the Applicant to the terminology used in the American legal system (and even that is questionable, as we have no description of the class), it also falls short of replicating even the first year of law school in the United States. Thus, like in *Yisa*, it seems clear that "Osakwe's education was equivalent to an American legal education in a way that [the Applicant's] education was not." *Yisa*, 297 S.W.3d at 577.

*2. The Applicant is not otherwise qualified as a foreign law school graduate under SCR 2.014(3).*

■ If a graduate of a foreign law school does not meet the general educational requirement of a J.D. or equivalent professional degree from an accredited American school, then the person may only take the Kentucky bar examination by complying with SCR 2.014(3).[8] Basically, the rule requires that the foreign applicant's education be the "substantial equivalent" of that provided by an approved school in Kentucky, SCR 2.014(3)(a), and that the foreign attorney have some legal practice experience, specifically, "that the applicant has been actively and substantially engaged in the lawful practice of law as his or her principal business or occupation for at least three of the last five years immediately preceding the filing of the application," SCR 2.014(3)(c).

It is clear that the Applicant does not satisfy the second requirement. As her own letter to the Board admitted, her only law practice has been since she was admitted to the New York and Southern District of Indiana's bars, both of which occurred in the summer of 2011. She thus does not even have one year of legal practice, much less the three required years. As a result, the Board properly declined to evaluate whether the Applicant's foreign legal education was the substantial equivalent of a legal education at a Kentucky law school. Such evaluation would be premature and could require needless expense, which would be borne by the Applicant under the rules.

**B. The Applicant has not shown that she should be granted a waiver of SCR 2.014(3)'s requirements.**

■ The applicant argues in the alternative that she should be granted a waiver of the requirements in SCR 2.014(3) because she sat for and passed the New York bar examination with a Multistate Bar Examination (MBE) score high enough to pass that part of the Kentucky bar examination, has practiced law in other American jurisdictions, and has worked as a paralegal at an American law firm. Ulti-

**8.** That subsection provides:

(3) An attorney who received a legal education in a foreign country and is not eligible for admission by virtue of not having attended a law school approved by the American Bar Association or the Association of American Law Schools may nevertheless be considered for admission by examination provided the attorney satisfies the following requirements:

(a) The foreign attorney's legal education is the substantial equivalent of the legal education provided by approved law schools located in Kentucky. The applicant shall bear the cost of the evaluation of their legal education, as determined by the Board, and the application shall not be processed until the applicant's legal education is approved by the Board of Bar Examiners.

(b) In evaluating the education received the Board of Bar Examiners shall consider, but not be limited to, such factors as the admission of the applicant to the bar of another state or the District of Columbia, the simi-

larity of the curriculum taken to that offered in law schools approved by the American Bar Association or by the Association of American Law Schools, that the school at which the applicant's legal education was received has been examined and approved by other state bar associations examining the legal qualifications of foreign law school graduates, and the applicant's proficiency in written and spoken English.

(c) The applicant shall, in order to qualify to sit for the Bar examination, also submit a certified copy of the record or license of the court or agency which admitted the applicant to practice law in such country, and satisfy the requirement that the applicant has been actively and substantially engaged in the lawful practice of law as his or her principal business or occupation for at least three of the last five years immediately preceding the filing of the application, in addition to any other requirements authorized by these rules.

mately, these claims are not convincing that a waiver is in order.

Perhaps the most important of these claims is that she was allowed to sit for the New York bar and was able to pass that examination on the first try. Again, while passing that notoriously difficult bar examination is laudable, neither that she was able to sit for the examination nor that she passed it is a good enough reason to allow a waiver.

New York's bar examiners appear especially friendly to foreign applicants.[9] Presumably due to the large number of foreign applicants, New York distinguishes between graduates of foreign law schools with a focus on the common law tradition, lawyers who trained in a law office under the common law tradition, and lawyers who graduated from schools in non-common law countries. Applicants who fall into the latter two categories must attend an educational program, usually an LL.M. program, in an American law school before they may sit for the bar examination. New York describes this as the "cure provision," whereby an applicant can cure her educational deficiency, at least in part. For Applicants enrolled in such a cure program before the 2012–2013 educational year, as was the case with the Applicant, the educational requirements of the program are far less stringent than those that would be sufficient under the *Osakwe* case described above. The Applicant needed only to complete 20 credit hours that included "basic courses in American law." This latter requirement is met by taking only two courses in subjects tested on the bar examination or courses approved in advance by the Court of Appeals.

That she was able to pass the New York bar examination also seems insufficient, as that is one of the considerations under the rule itself for whether an applicant's education is functionally equivalent to that in a Kentucky law school. *See* SCR 2.014(3)(b). The same goes for her claim that she has practiced law in other jurisdictions. Allowing a waiver of the rule simply because an applicant meets some of the rules requirements, but not others, would render SCR 2.014 toothless.

Finally, the Applicant's claim that her work for several years as a paralegal supports a waiver is the least convincing. No doubt, paralegals make much of the work of lawyers possible, and many of them could practice law as well as many lawyers, even without having attended law school. But we have a rule in place for a reason. The training of paralegals as a whole simply does not compare to that received by students at accredited American law schools.

Admittedly, the rule is imperfect, but then every rule is somewhat imperfect. There will always be outliers to whom application of a rule seems unfair because of their circumstances. But we establish rules as a shortcut so that we don't have to engage in a lengthy analysis of each individual case. In essence, rules are intended to cut costs and enhance efficiency overall, even at the cost of sometimes imperfect outcomes.

Our rules reflect the belief that the combination of an accredited American legal education and passing the bar examination is the best predictor of whether a person is qualified to practice law in this state. While neither by itself is a perfect proxy for that ultimate goal, each fills gaps in the other and increases confidence that members of the bar are qualified. Similarly,

---

9. The provisions for foreign graduates seeking to take the New York bar examination are outlined at *Foreign Legal Education,* The New York State Board of Law Examiners, http://www.nybarexam.org/Foreign/ForeignLegal Education.htm (last visited Apr. 10, 2012).

SCR 2.014(3) reflects the belief that several years of practical legal experience, along with the functional equivalent of a Kentucky law school education, are the next predictors of whether a foreign-educated attorney is qualified to practice law in this state. The requirement of several years of law practice is especially important because the second requirement, an equivalent education, is in many ways imperfect by itself. First, no one-time evaluation of a law school is likely to be as thorough as the process by which the ABA and AALS go through to accredit American schools, meaning that the chance of error is higher. Second, it is expensive both for the Board and the Applicant to evaluate the educational program of an unfamiliar school. This expense is multiplied when the school in question is in another country.[10]

Every time we depart from the rule, for example, by a waiver, and engage in ad hoc decision-making, we undermine overall efficiency and the confidence engendered by the rule. Whether the rule actually achieves its goal of efficient decision-making is part of what we ask when deciding whether to have the rule in the first place or whether to change it. But those are not the questions before us. The question is simply whether we should depart from the rule in this instance.

This Court does not need to answer the broad question of whether it can or should ever depart from the rule in this case. Even assuming the Court should *ever* allow a waiver of the rule, a showing of something more than what the Applicant has shown would be necessary. She has shown little more than that she complies with some parts of the rule. That, by itself, cannot be grounds for waiving the remainder of the rule.

### III. Conclusion

Based on the discussion above, Applicant has not shown why her motion should be granted. She has not met the requirements of SCR 2.014 to sit for the bar examination, and she has not shown a valid reason why she should be exempted from its requirements.

### ORDER

Accordingly, the Applicant's motion for this court to review and reverse the decision of the Board of Bar Examiners denying her the right to sit for the Kentucky bar examination at this time is hereby DENIED.

All sitting. All concur.

ENTERED: April 26, 2012.

/s/ John D. Minton
    Chief Justice

---

10. A rule change could help alleviate these costs, for example, by outsourcing the evaluation of unaccredited foreign schools to private credential evaluation companies, as California does. *See Foreign Education*, The State Bar of California, http://admissions.calbar.ca.gov/Education/LegalEducation/Foreign Education.aspx (last visited Apr. 10, 2012) (outlining use of credential evaluation agencies); Committee of Bar Examiners/Office of Admissions, *Credential Evaluation Services*, The State Bar of California, http://admissions.calbar.ca.gov/Portals/4/documents/Education/Credential—Evaluation—Services-R.pdf (last visited Apr. 10, 2012) (listing credential evaluation agencies).