In re Petition of JaneAnne MURRAY, for Waiver of Requirements Under Rules 4A and 7A of the Minnesota Rules for Admission to the Bar.

No. A12–0568.

Supreme Court of Minnesota.

Sept. 26, 2012.

Lewis A. Remele, Bassford Remele, Minneapolis, MN, for petitioner.

Lori Swanson, Attorney General, Karen B. Andrews, Assistant Attorney General, Saint Paul, MN, for respondent Board of Law Examiners.

ANDERSON, PAUL H., Justice.

Petitioner JaneAnne Murray seeks a waiver of the Minnesota Rules for Admission to the Bar, rules that currently do not allow her to apply for admission to Minnesota's bar. Murray is presently prevented from admission to the bar in Minnesota, or from sitting for the Minnesota bar examination, because her undergraduate and law degrees are from universities in Ireland and England. The grounds for Murray's petition include her education credentials, successful completion of the New York State Bar Examination and her more than 20 years of extensive legal practice in the State of New York. We grant the petition.

We begin our analysis by summarizing Murray's educational and professional credentials as alleged in her petition, credentials that are unchallenged here. Murray is a native of Ireland, and in 1989 graduated from University College Cork in Cork. She graduated first in her class at University College Cork with a bachelor's degree in civil law. To fulfill her bachelor's degree program, Murray took courses in constitutional law, criminal law, contract law, torts, property law, family law, administrative law, and evidence. Murray subsequently earned a Masters of Laws (LL.M.) from the University of Cambridge in Cambridge, England. She graduated from the University of Cambridge in 1990 and was ranked fourth in her class.

After graduating from Cambridge, Murray moved to New York to practice with the law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP, and applied to take the New York State Bar Examination. The record indicates that Murray's foreign legal education qualified her to sit for the bar examination in New York because her education was based on principles of English common law and because Murray's education was equivalent in duration to that of a course of study at an ABA-accredited law school in the United States. Murray passed the New York State Bar Examination on her first attempt and was admitted to the New York State bar in March 1991.

In 1993 Murray left the Paul, Weiss law firm to become a trial attorney at the Criminal Defense Division of the Legal Aid Society of New York. In her 2–plus years as a public defender at the Legal Aid Society, Murray tried 10 jury trials and represented clients in numerous contested court hearings. In 1995 Murray became a trial attorney in the Federal Defender Division of the New York Legal Aid Society. In 1999 Murray took a leave of absence to work in Cambodia as an International Advisor to the United Nations High Commission for Human Rights. Murray returned to the Federal Defender's Office in 2000, and in 2001 became litigation counsel at the law firm of O'Melveny & Myers LLP in New York City, where she represented clients in several high-profile criminal investigations.

Since 2005 Murray has maintained a solo law practice in New York, where she specializes in criminal defense. She has represented criminal defendants in cases involving such matters as multi-million dollar insurance fraud, insider trading, and criminal tax fraud. She is on the Board of Directors of the New York State Criminal Defense Lawyers Association and the Irish

American Bar Association of New York, a member of the New York Council of Criminal Defense Lawyers, and on the Board of Editors of the White Collar Crime Reporter, among other positions.

In 2011 Murray's husband accepted a position at the University of Minnesota and Murray relocated to Minnesota with her family. Upon coming to Minnesota, Murray was appointed as a Practitioner in Residence at the University of Minnesota Law School. At the time this petition was filed, Murray was continuing to maintain her New York criminal defense practice.

In March 2012 Murray petitioned our court to "declare her eligible to apply for admission to practice under Rule 7A" of the Rules for Admission to the Bar. Under Rule 7A of the Rules for Admission to the Bar, an applicant may be eligible for admission without examination "if the applicant otherwise qualifies for admission under Rule 4 (excluding applicants who qualify only under Rule 4A(3)(b))" and demonstrates that for at least 60 of the 84 months immediately preceding the application, the applicant was:

(a) Licensed to practice law;

(b) In good standing before the highest court of all jurisdictions where admitted; and

(c) Engaged, as principal occupation, in the lawful practice of law as a:

i. Lawyer representing one or more clients;

ii. Lawyer in a law firm, professional corporation, or association;

iii. Judge in a court of law;

iv. Lawyer for any local or state governmental entity;

v. House counsel for a corporation, agency, association, or trust department;

vi. Lawyer with the federal government or a federal governmental agen-cy including service as a member of the Judge Advocate General's Department of one of the military branches of the United States;

vii. Full-time faculty member in any approved law school; and/or

viii. Judicial law clerk whose primary responsibility is legal research and writing.

Rule 7A, Rules for Admission to the Bar.

In addition to the foregoing requirements, an applicant for admission under Rule 7A must "otherwise qualif[y] for admission under Rule 4 (excluding applicants who qualify only under Rule 4A(3)(b))." Rule 4A of the Rules for Admission to the Bar sets out the following requirements for admission to the bar in Minnesota:

The applicant has the burden to prove eligibility for admission by providing satisfactory evidence of the following:

(1) Age of at least 18 years;

(2) Good character and fitness as defined by these Rules;

(3) Either of the following:

(a) Graduation with a J.D. or LL.B. degree from a law school that is provisionally or fully approved by the American Bar Association; or

(b) (i) A bachelor's degree from an institution that is accredited by an agency recognized by the United States Department of Education;

(ii) a J.D. degree from a law school located within any state or territory of the United States or the District of Columbia;

(iii) that the applicant has been licensed to practice law in any state or territory of the United States or the District of Columbia in 60 of the previous 84 months; and

(iv) the applicant has been engaged, as principal occupation, in the practice

of law for 60 of the previous 84 months in one or more of the activities listed in Rule 7A(1)(c);

(4) Passing score on the written examination under Rule 6 or qualification under Rules 7A, 7B, 8, 9, or 10. An applicant eligible under Rule 4A(3)(b) but not under Rule 4A(3)(a) must provide satisfactory evidence of a passing score on the written examination;

(5) A scaled score of 85 or higher on the Multistate Professional Responsibility Examination (MPRE); and

(6) Not currently suspended or disbarred from the practice of law in another jurisdiction.

Murray is not eligible for admission to the Minnesota bar under Rule 4A(3)(a), Rules for Admission to the Bar, because her law degree is not from a law school that is accredited by the American Bar Association (ABA). Nor is Murray eligible under Rule 4A(3)(b) because her bachelor's degree from University College Cork is not from an institution that is accredited by an agency recognized by the United States Department of Education and because her law degree is not from a law school located in the United States. Given this ineligibility under our Rules for Admission to the Bar, Murray petitioned our court to "waive the requirements of Rule 4A that prevent her admission" without examination under Rule 7.

*Educational Requirements*

■ Although our Rules for Admission to the Bar incorporate educational requirements, we have inherent authority to waive those educational requirements in an exceptional case. *In re Dolan,* 445 N.W.2d 553, 557 (Minn.1989). We have waived those educational requirements only once, granting the petition of Milton Schober. *Id.* at 555. Schober graduated in 1955 from a proprietary law school located in Louisiana that closed its doors in 1964.

*Id.* During the years that the school operated, the *ABA* did not accredit proprietary law schools. *Id.* Schober passed the Louisiana Bar Examination in 1955, was admitted to the bar of the United States Supreme Court in 1961, and to the District of Columbia bar in 1972. *Id.*

In 1986, after serving with the Federal Reserve System and the National Commission on Finance, Schober became senior vice president and secretary of ITT Consumer Financial Corporation in Minnesota and sought admission to the Minnesota bar. *Id.* At the time, the Rules for Admission to the Bar gave the Board of Law Examiners discretion to recommend a waiver of the rules for admission. *See id.* In recommending a waiver in Schober's case, the Board cited several factors: (1) the law school from which Schober graduated "was a proprietary law school when Schober graduated from it and not eligible for ABA accreditation until 1977, by which time the school had closed"; (2) Schober had practiced law for 33 years; (3) Schober was admitted to the bar in a number of other jurisdictions; (4) Schober "had apparent expertise in his field of practice"; and (5) Schober "had shown that hardship would result from requiring him to attend law school again." *Id.* at 556. We waived the requirement of graduation from an ABA-accredited law school and allowed Schober to be admitted to the practice of law in Minnesota. *Id.* at 558.

We have, however, declined to waive the educational requirement for admission to the bar in several other cases. For example, at the same time that we waived the educational requirement for Milton Schober we declined to waive the requirement of graduation from an ABA-accredited law school for applicant Paul Dolan. Dolan graduated from the University of West Los Angeles School of Law, a law school not accredited by the ABA even though it

presumably could have sought such accreditation. *Id.* at 556. Dolan was admitted to the bar in both California and Hawaii and to the bar of the United States Supreme Court. *Id.* He worked as a public defender for 5 years and in private practice for 4 years thereafter. *Id.* But when Dolan petitioned for a waiver, he offered no explanation to our court for his law school's lack of ABA accreditation, nor did he present any statement from the ABA as to the basis for lack of accreditation or the academic quality of the University of West Los Angeles School of Law. *Id.* at 558.

Similarly, in *In re Hansen* we declined to waive the requirement of graduation from an ABA-accredited law school to allow *Bryan* Hansen to sit for the Minnesota bar examination. 275 N.W.2d 790, 798–99 (Minn.1978). Hansen began law school at an ABA-accredited law school, Marquette University Law School, but transferred to and graduated from Western State University College of Law in California, a school which had never applied to the ABA for accreditation. *Id.* at 791–92. Hansen chose to transfer to Western State University despite having an earlier conversation with the Dean at Marquette who warned Hansen that he should "remain at Marquette ... because of its ABA-approved status." *Id.* at 792. When we declined Hansen's waiver request, we explained that fairness and equity did not require us to consider Hansen's waiver claim when he "chose to transfer from an ABA-approved school to a nonaccredited one far away from his home state knowing that this move would pose problems for him if he later wanted to return to Minnesota to practice law." *Id.* at 798. We also rejected Hansen's contention that his passage of the California bar examination and his admission to practice in California "necessitate[d] a waiver of the educational rule." *Id.*

In *In re Busch,* we declined to waive the requirement of graduation from an ABA-accredited law school for 20 applicants who had graduated from the Butler School of Law in Minnesota. 313 N.W.2d 419, 420–21 (Minn.1981). The Butler School operated for *three* years and closed its doors 15 days after the petitioners graduated. *Id.* at 421. During its *three*-year existence, the Butler School of Law never satisfied ABA requirements for faculty, library, or administration. *Id.* at 421–22. In denying the 20 applicants' request for waiver, we explained:

> Petitioners may meet or exceed the legal educational standards of 30 years ago, but they did not receive a legal education of the quality this court requires of today's bar applicants. At the core of an effective program of legal education must be at least six full-time law school faculty members and a law library adequate to support the law school's educational program. Butler was never able to meet these requirements and never made application for ABA approval.

*Id.* at 422 (footnote omitted) (citation omitted).

■ Based on the foregoing case law, it is evident that we have set a high standard for waiving our established standard for the educational requirement for admission to the Minnesota bar. Here, we are satisfied that petitioner Murray exceeds the high standard we set in *Dolan* for waiver of the educational requirement. Murray's legal education at University College Cork and the University of Cambridge—universities that teach the law in the same English common-law tradition upon which our own laws are based—are the equivalent, both in subject matter and duration, to a law degree from a law school that is accredited by the ABA. Moreover, as in

Schober's case, Murray's degrees are from colleges that cannot be accredited by the ABA. Finally, as in Schober's case, given Murray's passage of another state's bar examination, her many years of practicing law, her demonstrated knowledge of the law, and her professional accomplishment, we conclude that it would be an extreme, and unnecessary, hardship to require Murray to now enroll in, and graduate from, an ABA-accredited law school.

### Admission Without Examination

Murray not only seeks waiver of the educational requirement for sitting for the Minnesota bar examination, but she seeks admission to the Minnesota bar under Rule 7A, which allows applicants with significant practice experience to be admitted to the bar without examination. Specifically, under Rule 7A an applicant who otherwise qualifies for admission to the Minnesota bar may be admitted without successfully completing the Minnesota bar examination if she has been licensed to practice law, is in good standing before the highest court of all jurisdictions in which she is admitted, and is engaged as her principal occupation in the practice of law in another state for at least 60 of the 84 months immediately preceding the application.

Having decided that it is appropriate to waive the educational requirement for Murray, we now address the question whether we should waive the requirement that she successfully complete the Minnesota bar examination. We find the question of whether to waive the requirement that Murray take the Minnesota Bar Examination a much closer question than was waiver of the educational requirement. We have consistently recognized an interest "in insuring that members of the bar are worthy of public trust with regard to their professional competence." *In re*

*Busch,* 313 N.W.2d at 421. But we have also noted that a decision to grant a waiver of strict compliance with the rules for admission to the bar "must depend on, among other things, the demonstrated competence of the applicant in the years of practice following law school." *In re Dolan,* 445 N.W.2d at 557.

■ Ultimately, we conclude that the confluence of several factors related to Murray's case—a stellar educational record, a long and impressive professional resume, and familial hardship—combine to make her case sufficiently distinctive that we are persuaded to waive the requirement that she successfully complete the Minnesota bar examination.

First, Murray successfully completed the New York State Bar Examination in 1991, a bar examination much like our own. The New York State Bar Examination, which is administered by the New York Board of Law Examiners is a two-day examination, with one day devoted to the Multistate Bar Examination (MBE). *The New York State Bar Examination,* N.Y. St. Bd. Law Examiners, *http://www.nybarexam*.org/TheBar/TheBar.htm# descrip (last visited Sept. 11, 2012). Minnesota's bar examination is also a 2–day examination, with 1 day devoted to the MBE, and is administered by our Board of Law Examiners. The second day of the New York bar exam consists of multiple-choice and essay questions on any of the several topics covered by the MBE (contracts, constitutional law, criminal law, evidence, real property, and torts) and on such other subjects as family law, the Uniform Commercial Code, wills and estates, and federal civil jurisdiction and procedure. The second day of Minnesota's bar examination also consists of essay questions on the topics covered by the MBE and on such other subjects as family law, the Uniform Commercial Code, and the law of wills and estates.

Second, Murray has clearly demonstrated her legal proficiency by practicing law in New York for 22–plus years. While practicing law in New York, she has successfully worked in several demanding legal positions and has served the legal profession through her membership and leadership in numerous law-related professional organizations.

Finally, we conclude that to require Murray's successful completion of the Minnesota Bar Examination will pose a significant hardship for her. The Minnesota bar exam will next be administered in February 2013, the results of which will not be available until May 2013. In other words, if we require Murray to successfully complete the Minnesota Bar Examination as a condition of applying for admission to the Minnesota bar, she cannot be licensed to practice law in Minnesota before May 2013. In the meantime, Murray can practice law, if at all, in New York. Murray credibly contends that the nature of her practice—criminal defense—makes it impracticable for her to maintain a practice in New York while living in Minnesota with her husband and two school-aged children.

For all of the foregoing reasons, we deem it appropriate under the unusual circumstances presented here to allow petitioner JaneAnne Murray to be admitted to the practice of law in Minnesota upon compliance with Rule 7, Rules on Admission to the Bar, except that instead of compliance with Rule 4A(3)(a), Murray shall provide satisfactory evidence of graduation with a bachelor's degree in civil law from University College Cork and graduation with a Masters of Laws degree from Cambridge University.

Petition granted.

Concurring and dissenting, DIETZEN, J. and GILDEA, C.J.

DIETZEN, Justice (concurring in part, dissenting in part).

I agree that Murray has met her burden of proving she is entitled to a waiver of the education requirement under Rule 4A(3) of the Rules for Admission to the Bar, and therefore I join that portion of the majority opinion. But Murray has failed to establish she is entitled to a waiver of the requirement that she pass the Minnesota bar exam. Specifically, our precedent provides that Murray demonstrate hardship or that her case is exceptional. Because Murray has merely shown inconvenience, she should be treated like any other applicant and be required to pass the bar exam as a condition to her admission. Accordingly, I respectfully dissent from the court's decision to allow Murray to be admitted to the Minnesota bar without taking and passing the bar exam.

I.

The Rules contain the requirements for admission to practice law in Minnesota. The purpose of these requirements is to ensure that "members of the bar are worthy of public trust with regard to their professional competence." *In re Busch,* 313 N.W.2d 419, 421 (Minn.1981); *see also* Rule 1, Rules for Admission to the Bar (RAB). Applying uniform, rule-based admission criteria to all bar applicants serves the public interest.

Rule 4A(3) prescribes the minimum educational standards necessary for admission to the Minnesota bar. The 2011 amendments to Rule 4A created a narrow exception to the otherwise-applicable requirement of an ABA-approved legal education. The exception allows applicants who have earned both a bachelor's degree from an institution accredited by the United States Department of Education and a juris doc-

tor degree from an American law school to sit for the bar exam if they have practiced law for five of the last seven years in another state. Rule 4A(3)(b), RAB. The Court declined to amend Rule 4A to allow for the admission of foreign-educated applicants, regardless of their practice experience. *See* Order Promulgating Amendments to Rules for Admission to the Bar, ADM10–8008, at 6 (June 27, 2011).

In *In re Dolan*, this court recognized that it has the inherent authority to waive the admission requirements in an "exceptional case." 445 N.W.2d 553, 557 (Minn. 1989). Even so, we cautioned that a waiver "will not be lightly made and must depend on, among other things, demonstrated competence of the applicant in the years of practice following law school." *Id.* Indeed, the applicant must demonstrate "hardship" or "other compelling reasons" to warrant a waiver. *Id.* We waived the education requirement—the only time we have previously done so—as to one of the petitioners, Schober, who graduated from a proprietary law school that the ABA did not then review for accreditation, passed the Louisiana bar exam, and practiced law for 33 years in multiple jurisdictions. *Id.* at 555–56, 558. But we enforced the education requirement as to the other petitioner, Dolan, who, having passed both the California and Hawaii bar exams, graduated from an unaccredited law school and practiced part-time for 12 years. *Id.* at 556; *Dolan v. State Bd. of Law Exam'rs*, 483 N.W.2d 64, 65–66 (Minn.1992).

The majority concludes, and I agree, that Murray satisfies the *Dolan* hardship and other compelling reason standard with respect to the education requirement. Forcing Murray to complete a J.D. or LL.B. degree, in compliance with the Rules, would certainly constitute a hardship. In addition, her graduation from a prestigious foreign institution that offers equivalent instruction to an ABA-approved law school is compelling enough to waive the education requirement.

## II.

Additionally, the Rules provide that an applicant who has not graduated from an ABA-approved law school must pass the Minnesota bar exam. Rules 4A(3)(b), 4A(4), 7A(1), RAB. The majority relies on three pieces of evidence in granting Murray a waiver of this requirement. They are that (1) she successfully completed the New York bar exam; (2) she has 22 years of experience; and (3) taking the bar exam will pose a "significant hardship for her."

In doing so, the majority applies a watered-down version of *Dolan* that replaces a hardship with ordinary inconvenience. Specifically, Murray's request to waive the requirement that she pass the bar exam falls short of the *Dolan* hardship and other compelling reason standard for three reasons. First, we have *never* accepted the passage of another state's bar exam, in and of itself, to excuse the rules for admission. Previously in *In re Hansen*, we refused to admit the applicant even though he previously passed California's bar exam. 275 N.W.2d 790, 792, 798 (Minn. 1978); *accord In re Dolan*, 445 N.W.2d at 555–56, 558; *Busch*, 313 N.W.2d at 421–22. The bar exam plays a vital role to "weed out the small number [of applicants] who are unfit to practice law." *In re Hansen*, 275 N.W.2d at 798. Despite Murray's impressive resume, she—similar to all others—should face the same scrutiny. Essentially, the majority carves out a new exception to the bar admission rules: foreign-educated applicants need not pass the Minnesota bar exam to practice law in Minnesota if they are licensed in another state with sufficient practice experience under Rule 4A. This is an exception we

declined to adopt in 2011, and should decline to adopt here. *See* Order Promulgating Amendments to Rules for Admission to the Bar, ADM10–8008 (June 27, 2011).

Notably, other states have limited review of requests from foreign-educated applicants to ascertain if they qualify for waiver of the state's education requirement. *See, e.g., In re Paniagua de Aponte,* 364 S.W.3d 176, 182–83 (Ky.2012) (Dominican Republic-educated applicant not authorized to sit for the bar exam despite passing the New York bar exam); *Osakwe v. Bd. of Bar Exam'rs,* 448 Mass. 85, 858 N.E.2d 1077, 1084 (2006) (Nigerian-educated applicant privileged to sit for the bar exam because of his exposure to the common-law tradition and knowledge of American law); *In re Application of Collins–Bazant,* 254 Neb. 614, 578 N.W.2d 38, 44 (1998) (Canadian-educated applicant permitted to sit for the bar exam given her training in English common law and significant work experience). What Murray now asks of us is something entirely different: not simply waiver of the education requirement, but waiver of the bar exam requirement as well.

Second, we have also *never* held that length of practice in another jurisdiction alone is sufficient to waive the bar exam requirement. *See In re Dolan,* 445 N.W.2d at 558–59. In *In re Dolan,* we granted a waiver to Schober not merely because he attained 33 years of practice experience, but because "[r]igid adherence" to the requirements would mean "that a 61 year-old man would have to go back to law school after 33 years of practice...." *Id.* at 558. In comparison, Murray's proffered reasons for admission are not that compelling.

Finally, the "hardship" faced by Murray is no more severe than what would face any attorney moving from another state to Minnesota. Simply put, any attorney who moves to Minnesota from another state will find it impractical to continue practicing in the former state. In *In re Hansen,* we deemed the applicant's "inconvenience ... of practicing law away from his family" as not sufficiently compelling. 275 N.W.2d at 798. This ordinary, run-of-the-mill inconvenience that the majority characterizes as a hardship is inherent in uprooting a family and moving to Minnesota, and is far from a compelling reason to waive the bar exam requirement.[1]

In the end, the majority premises its conclusion on the "unusual" circumstances of Murray's case. Yet our precedent requires an "exceptional" case to justify a waiver of the bar admission requirements that apply to all applicants who seek to practice law in Minnesota. *In re Dolan,* 445 N.W.2d at 557. Murray has failed to demonstrate a hardship beyond ordinary inconvenience that warrants a waiver of the bar exam requirement. Because the majority's reasons on this point are insufficient under *In re Dolan,* I would hold that Murray—like every other applicant—must pass the Minnesota bar exam prior to admission.

---

**1.** Because our case law establishes that the first two reasons the majority cites for waiver are *per se* insufficient, in reality the majority is granting a waiver *solely* because of the ordinary "hardship" posed to Murray and her family. *See Dolan,* 445 N.W.2d at 558–59; *In re Hansen,* 275 N.W.2d at 792. I find this rationale troubling and unsustainable under an equal protection analysis. In light of the majority's opinion today, when future applicants with similar familial or other common hardships petition us to waive Rule 7A, we will have to grant those petitions or render an "arbitrary and capricious" result in violation of the Equal Protection Clause. *See State v. Cox,* 798 N.W.2d 517, 528 n. 12 (Minn.2011) (internal quotation marks omitted) (discussing the test for an equal protection violation).

GILDEA, Chief Justice (concurring in part, dissenting in part).

I join in the concurrence and dissent of Justice Dietzen.